# 358-15

ORIGINAL

Court of Criminal Appeals
of TEXAS
Austin, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 26 2015

Abel Acosta, Clerk

Herron Kent Duckett,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

FILED IN
COURT OF CRIMINAL APPEALS

MAY 27 2015

Abel Acosta, Clerk

This is a pro se P.D.R.
Trial Court No. 43,063-B

Re: Appeal No. 06-14-00060-CR
DUCKETT V. STATE

# TABLE OF CONTENTS

(pages)

TABLE OF CONTENTS _____ 1

INDEX OF Authorities _____ 2

Oral Argument _____ 3

Nature of the case _____ 4

Procedural history of the case _____ 5

Grounds for Review or Questions presented _____ 6

Direct and brief argument _____ 7, 8

Prayer _____ 9

Copy of any opinions, court of appeals _____ 10
in this case

# INDEX OF Authorities

## CASES

Brooks v. State, 323 S.W. 3d 893, 912 (TEX. CRIM. App. 2010)

Drichas v. State, 152 S.W. 3d 630, (TEX. App. — TEXARKANA, 2004, pet. granted)

Drichas v. State, 187 S.W. 3d. 161, (TEX. App. — TEXARKANA, 2006, pet. granted)

Drichas v. State, 219 S.W. 3d 471, (TEX. App. — TEXARKANA, 2006, pet. ref'd)

In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970);

Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979);

LASTER v. State, 275 S.W. 3d 512, 517 (TEX. CRIM. App. 2009)

LOCKETT v. State, 874 S.W. 2d 810, 814 (TEX. App. — DALLAS 1994, pet. ref'd)

MANN v. State, 13 S.W. 3d 89, 92 (TEX. App. — Austin 2000) aff'd S.W. 3d 132 (TEX. CRIM. App. 2001)

# Oral Argument

The state failed to present evidence from which a reasonable jury could conclude beyond a reasonable doubt that anyone were actually endangered by me, Herron Kent Duckett's operation of the vehicle. Viewed in a light most favorable to the State, the record evidence does not support a conclusion that a rational trier of fact could have found the legal elements of using a vehicle as a deadly weapon beyond a reasonable doubt.

## Nature of the case

This is an appeal from a conviction for <u>EVADING ARREST WITH A Vehicle</u>, enhanced by two prior felony convictions. A Gregg County jury found me, HERRON KENT DUCKETT guilty of evading arrest with a vehicle and <u>use of a deadly weapon</u>, <u>an automobile</u>. THE JURY then assessed a 40 year sentence.

4

# Procedural History of the case

The date of opinion of the court of appeals was handed down on March 3, 2015. There was not a statement or date filed for rehearing.

## Grounds for Review or Questions presented

I believe the decision of the Court of Appeals is in conflict with there ruling in Drichas v. State, 152 S.W. 3d 630, (TEX. App. — TEXARKANA, 2004, pet. granted)

To sustain a deadly weapon finding, there must be evidence that others were actually endangered, not merely a hypothetical potential for danger if others are present.

The speed limit on the stretch of rural road traveled was 70 miles per hour. My top speed was 75. If Officer Burt would have turned his in-car camera in it would have clearly shown three things. It would have shown that I was not traveling at the high rate of speed claimed to elevate the EVADING charge. It would have shown that Officer Burt did in fact ram his vehicle into me three times as well as the excessive use of force.

There was no erratic swerving into traffic, loss of control of vehicle, disregarding of traffic signs, any other dangerous traffic offenses or maneuvers, or any actions that jeopardized anyone else on the road at 3 A.M. No evidence of intoxication, or being impaired by any substance while driving.

A deadly weapon finding is a fact-specific inquiry, and the mere "modicum" of facts in this case do not support such a finding. The Court of Appeals 6th Appellate District of TEXAS at TEXARKANA had conflicting resolutions whereas they stated Officer Burt stated I reached speeds of 95 to 100 then turned around and stated I reached speeds of 50 to 90. Which one is it?

6

## Direct and brief argument

In determining whether the evidence is legally sufficient to support a deadly weapon finding, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed 2d 560 (1979); Brooks v. State, 323 S.W. 3d 893, 912 (TEX. CRim. App. 2010) Under this standard, evidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. SEE Jackson, 443 U.S. at 319; In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L.Ed 2d 368 (1970); Brooks, 323 S.W. 3d at 899; Laster v. State, 275 S.W. 3d 512, 517 (TEX. Crim. App. 2009)

When a person is charged with using a deadly weapon, the evidence must establish that the weapon was actually deadly. LOCKETT v. State, 874 S.W. 2d 810, 814 (TEX. App. – DALLAS 1994, pet. ref'd) THE PENAL CODE defines a "deadly weapon" as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything in the manner of it's use or intended use is capable of causing death or serious bodily injury. . . . . "TEX. Pen. Code Ann §§ 1.07(a)(17)(A)(B) (Vernon 2006)

Because no one died or actually suffered serious bodily injury, the narrow issue in this case is whether any rational jury could have found appellant used a weapon (Vehicle) in a way that it could have caused death or serious bodily injury.

7

(cont.)

("an object is a deadly weapon <u>if</u> the actor intends a use of the object in which it would be capable of causing death or serious bodily injury") "To sustain a deadly weapon finding requires evidence that others were endangered, and not merely a hypothetical potential for danger if others had been present" MANN v. State, 13 S.W. 3d 89, 92 ( TEX. App. — Austin 2000), aff'd S.W. 3d 132 (TEX. Crim. App. 2001).

In Drichas v. State, 152 S.W. 3d 630, (TEX. App. — Texarkana, 2004, pet. granted) the Sixth District Court of Appeals reversed in part, deleted a deadly weapon finding, and remanded for resentencing.

In Drichas v. State, 187 S.W. 3d 161 ( TEX. App. — TEXARKANA, 2006, pet. granted), the same court once again held that the evidence was insufficient to establish that the defendant used his vehicle as a deadly weapon while attempting to evade pursuing officers.

In Drichas v. State, 219 S.W. 3d 471, (TEX. App. — TEXARKANA, 2006, pet. ref'd), the court weighed trial evidence at length and again reversed the deadly weapon finding and remanded the case for a new trial on that issue (use of deadly weapon).

The Court rejected the notion that every defendant charged with evading arrest or detention should also be charged with using a vehicle as a deadly weapon. The Court characterized the determination of whether a deadly-weapon finding is justified as "a fact-specific inquiry" and recognized that the facts will not always support such a finding.

8

## Prayer

Any reasonable fact finder could have reasonably concluded that my driving did not place anyone's life in danger. For the forgoing reasons listed in this PDR, I pray that the judgement in this case be modified to delete the deadly weapon finding.

Respectfully submitted,

Herron Kent Duckett
TDCJ-I.D # 1920602
EASTHAM UNIT
2665 Prison Rd #1
LOVELADY, TEXAS 75851

A Gregg County jury convicted Herron Kent Duckett of evading arrest with a vehicle, made an affirmative finding that Duckett used or exhibited a deadly weapon in the course of that evasion, and directed that he serve forty (40) years in prison. Duckett argues on appeal that the evidence was insufficient to support the deadly-weapon finding. We disagree with Duckett and affirm the trial court's judgment.

We find the evidence sufficient to allow a rational jury to have found (1) that Duckett's use of the vehicle he drove could have caused death or serious bodily injury, (2) that Duckett used this vehicle in the felony offense of evading arrest or detention with a vehicle, and (3) that others were put in actual danger as a result of Duckett's actions. We overrule Duckett's point of error.

We affirm the trial court's judgment and sentence.

DATE Submitted: February 11, 2015
DATE Decided: March 3, 2015

Bailey C. Moseley
JUSTICE

Do NOT Publish

# EBB B. MOBLEY
### ATTORNEY AT LAW
#### 422 NORTH CENTER STREET-LOWER LEVEL
#### P. O. BOX 2309
#### LONGVIEW, TEXAS 75606
#### Telephone: (903) 757-3331
#### Fax: (903) 753-8289

March 3, 2015

Herron Duckett                                      **CMRRR: 7011 1570 0001 6360 5575**
Inmate #1920602
Eastham Unit
2665 Prison Road #1
Lovelady, Texas 75851


                    Re: Appeal No. 06-14-00060-CR
                        Duckett v. State

Dear Mr. Duckett:

Enclosed is a copy of the opinion that denies your appeal.

Under Texas Rule of Appellate Procedure 48, I must advise you that you have the right to file a pro se Petition for Discretionary Review of this opinion within 30 days of the opinion (April 2, 2015). The Petition should be sent to:

Clerk
Court of Criminal Appeals
P.O. Box 12308
Austin, Texas 78711

Very Truly Yours,

Ebb B. Mobley

kk/

enc

cc:    Bennie Duckett
       Tony Duckett



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00060-CR

---

HERRON KENT DUCKETT, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 43,063-B

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

A Gregg County jury convicted Herron Kent Duckett of evading arrest with a vehicle,[1] made an affirmative finding that Duckett used or exhibited a deadly weapon in the course of that evasion, and directed that he serve forty years in prison. Duckett argues on appeal that the evidence was insufficient to support the deadly-weapon finding. We disagree with Duckett and affirm the trial court's judgment.[2]

Duckett quarreled with his girlfriend and then drove away in her 2005 Jeep Liberty, causing her to alert the police. Longview police officer Steven Burt responded to Duckett's girlfriend's 9-1-1 call and spotted the Jeep about 3:00 a.m. in the parking lot of the apartment complex where she lived. Burt activated the overhead lights on his police car, but instead of stopping, Duckett drove the Jeep rapidly out of the parking lot and onto a public road. Burt gave chase with his lights ablaze and his siren sounding; another patrol car driven by Longview police officer Kendric Montgomery[3] joined the chase as the first two vehicles left the parking lot. The chase continued through the streets of Longview, and after the string of cars exited the Longview city limits, they were joined by two vehicles driven by Gregg County sheriff deputies, who followed the police officers. Describing the circumstances under which the chase took place, Burt stated, "Driving conditions were clear, dry pavement," with "[v]ery light traffic."

---

[1] *See* TEX. PENAL CODE ANN. § 38.04 (West Supp 2014).

[2] The State alleged and proved multiple prior felony convictions, and Duckett was sentenced to forty years' imprisonment.

[3] The dash-camera (dash-cam) video recorder in Burt's Chevrolet Tahoe SUV failed to turn on properly when he activated his overhead lights. The dash-cam video recorder in Montgomery's Tahoe recorded the pursuit.

2

Most of the chase occurred on a four-lane road, often with a turn lane in the middle. Burt said Duckett reached speeds of 95 to 100 miles per hour (mph). Burt said Duckett did not drive in an erratic fashion, and for the most part, Duckett neither left his lane of traffic nor jumped curbs as he sped. Montgomery's video recording, however, did reflect that Duckett crossed well into the two oncoming lanes of traffic before negotiating a wide-right turn onto a two-lane street. The neighborhood where the chase commenced is shown on the video recording to be primarily populated with businesses, but the path of the chase progressed through a variety of settings, traveling through rural areas, returning to business-dominated locales, and then returning to primarily rural areas. When Duckett made the wide right turn mentioned above,[4] he entered onto a paved, two-lane road for a short distance before turning onto an unpaved road. While travelling down the unpaved road, Duckett exited from the road and crossed a residential yard. Burt testified that along this stretch of the chase, Duckett drove through a yard and "[took] out" a mailbox.[5] Eventually, Duckett crashed through a barbed-wire fence and another fence or gate, finally stopping when he hit a tree. The windshield of the Jeep bore a large break, and officers said they saw blood and bits of hair on the inside of the glass. From these observations and the fact that (when finally subdued) Duckett was bleeding from his face, the officers opined that Duckett had struck his head on the inside of the windshield on impact with the tree.

Duckett attempted to continue his flight on foot, but Burt tackled him. Even then, Duckett did not willingly submit to the officers' physical restraint. Burt applied a headlock to

---

[4]Duckett appears to have signaled his intent to turn.

[5]The State asked, "And did it take out a mailbox?" Burt replied, "Yes, sir." We interpret this testimony as a colloquial way of saying Duckett's vehicle ran over or destroyed a mailbox.

3

Duckett, and Montgomery shot Duckett with a Taser. Even so, Duckett continued to struggle, and Burt administered blows to Duckett's body and head. The officers eventually handcuffed Duckett and placed him under arrest.

Montgomery corroborated much of Burt's testimony. Montgomery said he stayed a distance back from the first two vehicles, lest there be insufficient room for him to avoid a pileup in the event of a traffic accident. He concurred with Burt's testimony saying that the speed of the chase varied between 50 and 90 mph, and he agreed that Duckett's driving "was not erratic, just -- just speeding." The video recording from Montgomery's vehicle shows the Duckett-led chase encountering only a handful of vehicles. Four vehicles were encountered in the oncoming lanes; all of these vehicles appeared to have been in the outside lane (farthest from the caravan that made up the chased car and the chasers).[6] It appears from the video recording that when Duckett was on the four-lane road portion of the chase, he stayed on the inside or passing lane portion of the roadway. Duckett overtook and passed three vehicles during this leg of the chase and passed them quite quickly, indicating that he was traveling at a much higher rate of speed than the other cars and was in close proximity to those vehicles. As the chase returned from the more rural areas into an area populated by businesses, one vehicle exited the road upon which the chase was proceeding. From the perspective of Montgomery's dash camera, it appears that Duckett passed this car either before it entered the exit lane or as it did so. Duckett led his pursuers through several intersections. Duckett's high-speed driving would have likely posed danger to others at any of those intersections.

---

[6] It is quite possible that these vehicles were in that lane because they had been alerted to the oncoming procession by the bright overhead emergency lights of the police cruisers and were attempting to stay out of the way.

4

Although Burt said he did not hit or ram Duckett's vehicle with the vehicle he was driving (and although Montgomery said, from his vantage, he saw no indication that such contact occurred), Duckett maintained that Burt rammed his vehicle into the one driven by Duckett three separate times, one of these causing the Jeep driven by Duckett to hit a mailbox.[7] Duckett also testified that the Jeep had a top speed of only 75 mph, so he said that it was impossible for him to have surpassed that speed during the chase. Duckett also denied that he had struck the windshield of the Jeep with his head. He maintained that when his vehicle finally stopped, he exited the Jeep with his hands raised, after which the officers attacked him, causing the bloodied head. Duckett posited that the windshield had been smashed by the police after he was taken to jail in an effort to cover up the fact that they had assaulted him.[8]

"A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). On appellate review, we examine the evidence at trial in the light most favorable to the factual determinations made at the trial level to determine whether "any rational trier of fact could have found beyond a reasonable doubt that the [defendant's vehicle] was used or exhibited as a deadly weapon." *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Tisdale v. State*, 686 S.W.2d 110, 114 (Tex. Crim. App. 1985) (op. on reh'g)). To support a deadly-weapon finding, the evidence must show that the object at issue (here, the vehicle driven by Duckett) qualifies as a deadly weapon; in

---

[7] Duckett denied having an intent to evade arrest; instead, he said he had a "flashback" to a prior bad experience with law enforcement officers, leading him to resolve to drive to his father's house.

[8] We defer to the jury in their resolution of conflicts in testimony and to judge the credibility of witnesses. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

5

other words, if it was, "in the manner of its use[,] . . . capable of causing death or serious bodily injury."[9] We look to see if "the deadly weapon was used or exhibited during the transaction on which the felony conviction was based,"[10] and if "other people were put in actual danger."[11]

In *Drichas*, the defendant recklessly pulled out of a parking lot, causing one police officer to slam on his brakes. He then led law enforcement officers on a high-speed chase for about fifteen miles, running through a stop sign without stopping and disregarding other traffic signs and signals, knocking down a construction barrier, driving for a period on the wrong side of the road, and finally abandoning his vehicle, which continued to roll, unoccupied, eventually running into a parked car. *Drichas*, 175 S.W.3d at 797–98. The Texas Court of Criminal Appeals found that Drichas'

> manner of using his truck posed a danger to pursuing officers and other motorists that was more than simply hypothetical; the danger was real, and the manner in which appellant drove his truck made it capable of causing death or serious bodily injury, particularly where appellant drove on the wrong side of the highway.

*Id.* at 798.[12]

The holding in *Drichas* applies to our situation in this case even though, unlike Drichas' conduct (other than the high speeds Duckett traveled, which were almost certainly in violation of

---

[9]TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp 2014).

[10]*Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

[11]*Id.* "'Others' connotes individuals other than the actor himself, and danger to the actor alone does not meet the requisite standard of deadly-weapon use." *Id.*

[12]In *Drichas,* the court took note of one officer's testimony that while he saw Drichas drive on the wrong side of the highway, the officer "never saw any motorists swerve to avoid hitting appellant's truck, [and] stated that 'we were meeting some traffic somewhere around that point there.'" *Drichas*, 175 at 798 n.6.

6

posted speed limits), we do not find evidence of Duckett's disregard of traffic signs or signals.[13] The video recording reveals that Duckett encountered eight vehicles on public roadways during his flight that were not engaged in the chase. Duckett passed four of those eight on their left, going in the same direction.[14] Based on his high rate of speed, a rational jury could have found that Duckett put those drivers in danger.[15] In addition, Duckett put the pursuing law enforcement officers in actual danger. (As mentioned before, Montgomery, realizing the dangers posed by such a high-speed chase, said he kept well behind Burt's and Duckett's vehicles for fear of an accident.) Near the end of his flight from the officers, Duckett sped down a narrow road lined with houses, crossed a home's front yard, and knocked down a mailbox. Finally, Duckett led his pursuers off of the roads into a pasture, bursting through fences, and driving through what was described as a ravine (which was so deep that although the Longview police officers could still follow in their SUVs, the deputy sheriffs' sedans were unable to follow). While *Brister* instructs that "danger to the actor alone does not meet the requisite standard of deadly-weapon use,"[16] we find the fact that Duckett led the officers over very rough terrain during the chase and the fact that Duckett himself demonstrated danger by running the vehicle he

---

[13]Of course, there were other violations of law that were not in violation of posted signs or signals, such as the refusal to stop his car when being pursued by law enforcement officers with their warning lights ablaze and sirens blaring, and the momentary straying from his lane well into the lanes designated for oncoming traffic when preparing to turn right.

[14]In assessing the importance of the amount of traffic on the roads in a situation such as Duckett's, "[t]he volume of traffic on the road is relevant only if no traffic exists." *Drichas*, 175 S.W.3d at 799. We observe, though, that this comment was made in the court's factual sufficiency review, such review having since been abandoned. *See Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010).

[15]Burt testified that he had seen people struck by motor vehicles, suffering serious bodily injury or death.

[16]*Brister*, 449 S.W.3d at 494.

piloted into a tree as he was being chased support a finding that the pursuing police officers were placed in danger as they tailed the heels of the fleeing Duckett.[17]

We find the evidence sufficient to allow a rational jury to have found (1) that Duckett's use of the vehicle he drove could have caused death or serious bodily injury, (2) that Duckett used this vehicle in the felony offense of evading arrest or detention with a vehicle, and (3) that others were put in actual danger as a result of Duckett's actions. We overrule Duckett's point of error.

We affirm the trial court's judgment and sentence.

Bailey C. Moseley
Justice

Date Submitted: February 11, 2015
Date Decided: March 3, 2015

Do Not Publish

---

[17]The violence of the driving caused part of the bumper on Burt's police vehicle to fall off; this occurred when Burt followed Duckett through a barbed-wire fence.

8