

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-14-00407-CR

_____

AMADOR RODRIGUEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2014-402,814; Honorable Jim Bob Darnell, Presiding

August 8, 2016

OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Amador Rodriguez, was convicted by a jury of evading arrest, a third degree felony,[1] enhanced by two prior felonies.[2] The jury

---

[1] TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West Supp. 2015).

[2] *Id.* at § 12.42(d) (West Supp. 2015). Under this section, an offense is punishable by confinement for not more than 99 years or less than 25 years.

also made an affirmative finding as to the use of a motor vehicle as a deadly weapon.[3]

Punishment was assessed by the court at forty-five years confinement. By five issues, Appellant asserts the trial court erred in (1) submitting the case to the jury as the evidence was insufficient to show a lawful arrest or detention; (2) including a special issue in the jury charge on the use or exhibition of a deadly weapon, thereby causing him egregious harm and violating the legislative intent of section 38.04 of the Penal Code; (3) and (4) admitting State's Exhibits 1 and 2, both recordings of separate 911 calls, as inadmissible hearsay; and (5) violating his due process rights by committing two serious errors [introduction of State's Exhibits 1 and 2] during the guilt/innocence phase of trial that collectively amounted to cumulative error. We affirm.

BACKGROUND

In the early morning hours of June 28, 2013, a convenience store clerk and a customer in the store made separate 911 calls concerning a possible assault between a male and female in a blue SUV at the gas pumps. The customer added that he saw the male hit the female. Officers John Willhelm and Charles Holt, who were on patrol in their respective marked patrol cars and in uniform, were dispatched to the convenience store on a domestic disturbance call. When Willhelm arrived, he parked his car and was walking toward the store when he noticed the SUV. He did not observe the occupants fighting. Upon Holt's arrival, he pulled in behind the SUV to block it in. With the passenger door open, the driver shifted the SUV into reverse almost colliding with Holt's patrol car. Holt honked his horn, reversed his car, and narrowly avoided a collision. At that point, Willhelm used his flashlight and signaled for the driver to stop.

_____

[3] *Id.* at § 1.07(a)(17)(B) (West Supp. 2015).

2

As soon as the SUV cleared Holt's car, the driver shifted into drive and headed in Willhelm's direction. Willhelm had to turn his body sideways and "push off" the SUV to avoid contact as it left the parking lot. Holt then activated his patrol car lights and sirens and immediately gave chase. Willhelm returned to his car and joined in the pursuit.

At some point during the pursuit, Holt announced over his radio that the female occupant had exited the SUV. Unable to catch up with Holt, Willhelm decided instead to locate the female. When he found her, he instructed her to wait at a nearby McDonald's restaurant, while he rejoined the pursuit. When Willhelm was unable to catch up with Holt, he returned to McDonald's and discovered the female had fled.

A video from Holt's patrol car was played for the jury. It showed the SUV run through eighteen stop signs and at least one red light. Holt testified the SUV traveled at a high rate of speed through a residential area.[4] During the pursuit, the SUV struck a curb causing the driver to lose control and drive over a homeowner's lawn. The SUV eventually hit a large dirt mound in a construction zone causing it to collide with several unoccupied vehicles. When Holt reached the wrecked SUV, the driver was gone. Spectators informed the officers that the driver had fled on foot in a northerly direction. One of the patrol cars pursuing the driver was equipped with a thermal imaging system which was used to locate him. At that point, Appellant was apprehended and arrested.

EVADING ARREST

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to detain him. TEX.

---

[4] The officer testified that at one point his speed reached 100 miles per hour and the SUV stayed ahead of him.

PENAL CODE ANN. § 38.04(a).  The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures at the hands of government officials.  *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  An investigatory detention is a search and seizure for constitutional purposes.  Therefore, in order for a police officer to conduct a lawful investigative detention, he must have reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that the individual detained is, has been, or soon will be engaged in criminal activity.  *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013).  Articulable facts must amount to more than a hunch, suspicion, or good faith suspicion that a crime is in progress.  *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).  The test is an objective one that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists based on the totality of the circumstances.  *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005).

By his first issue, Appellant challenges the sufficiency of the evidence to show he was evading arrest by challenging whether there was ever a lawful detention.  The lawfulness of a detention is an element of evading arrest which is reviewed for legal sufficiency.  *See York v. State*, 342 S.W.3d 528, 544 (Tex. Crim. App. 2011); *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005).  In assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v.*

*Virginia*, 443 U.S. 307, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*; Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Using that standard, we measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000). We must also give deference to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

ANALYSIS

Appellant does not dispute that Willhelm and Holt were peace officers. They were dispatched to the convenience store on a domestic disturbance call involving a male and female in a blue "truck." They arrived in marked patrol cars and in uniform and observed only one blue vehicle in the parking lot—Appellant's SUV. Under these circumstances, the articulable facts available to the officers, when viewed objectively, reasonably led them to believe that Appellant was, had been, or soon would be involved in criminal activity. That their emergency lights and sirens were not activated is inconsequential. Their intent was not to arrest Appellant but merely to detain him and investigate whether an offense had occurred.

As he approached, Willhelm used his flashlight to alert Appellant that Holt was pulling in behind him and attempted to get him to stop. Appellant ignored these

5

directions from a uniformed officer and instead fled the parking lot in his SUV, barely missing Willhelm in the process. The facts available to the officers at the time (a domestic disturbance in which a male driving a blue vehicle allegedly assaulted a female) were sufficient to establish reasonable suspicion to lawfully detain Appellant. Issue one is overruled.

SPECIAL ISSUE ON VEHICLE AS A DEADLY WEAPON

By his second issue, Appellant asserts he was egregiously harmed by inclusion of the special issue concerning the operation of his vehicle as the "use or exhibition of a deadly weapon." He also contends the special issue violated legislative intent regarding section 38.04 of the Penal Code. We disagree.

A motor vehicle is not a deadly weapon *per se* but it can be found to be one if it is used in a manner that is capable of causing death or serious bodily injury. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014) (citing *Drichas v. State*, 175 S.W.3d 795, 797-98 (Tex. Crim. App. 2005)). Therefore, a deadly-weapon finding is justified if a rational jury could have concluded that the defendant's vehicle posed an actual danger of death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 254, 256-57 (Tex. Crim. App. 2009). To sustain a deadly-weapon finding, the evidence must show (1) the object in question (here, Appellant's SUV) meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during commission of the offense; and (3) other people were put in actual danger. *Brister*, 449 S.W.3d at 494. Intent to use a motor vehicle as a deadly weapon is not required. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

6

When reviewing claimed charge error, we first determine whether charge error occurred. *Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009). If no error occurred, a harm analysis is not required. *Id.* at 26. In *Drichas*, the defendant drove his truck recklessly while evading arrest. He drove the wrong way on a highway during a high-speed chase, failed to yield to oncoming traffic, committed traffic offenses, and turned into a construction zone where he knocked down barricades. 175 S.W.3d at 797-98. Although the testimony established there was only "some" traffic during the chase and Drichas had neither attempted to strike motorists nor force them to take evasive action, the Court found the evidence legally sufficient to support a deadly weapon finding.[5] *Id.* at 798.

In this case, several law enforcement officers testified to their accounts of the high-speed chase. They testified that the manner in which Appellant used his SUV was capable of causing death or serious bodily injury. The video of the pursuit played for the jury showed several instances of other vehicles being forced to pull over or get out of the way as Appellant ran multiple stop signs and a red light. Notwithstanding that traffic was light during Appellant's high-speed chase, traveling through a residential area at speeds ranging from sixty miles per hour to over one hundred miles per hour while running through eighteen stop signs and a red light did pose actual danger to the pursuing officers, as well as others, and was not merely hypothetical. Furthermore, at the beginning of the pursuit, Appellant drove his SUV with the passenger door open while the female occupant attempted to exit and he drove close enough to Officer

---

[5] The Court did remand the case for a factual-sufficiency analysis on the deadly-weapon finding. Factual sufficiency, however, is no longer reviewable. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

7

Willhelm that he had to take evasive action to avoid being struck. Based on this record, we conclude the trial court did not err by including a deadly-weapon special issue in the court's charge.

As a subsidiary argument to issue two, Appellant asserts the deadly-weapon special issue submitted to the jury violates the Legislature's intent behind section 38.04 of the Penal Code. Specifically, he asserts that the specific "internal punishment scheme" found in section 38.04(b)(2) (raising a state jail felony evading offense to a third degree evading offense if "the actor uses a vehicle while the actor is in flight and has previously been convicted [of evading]," or "another suffers serious bodily injury as a direct result of an attempt . . . to apprehend the actor while the actor is in flight") should control over the more general scheme found in section 12.35(c)(1) (providing that an individual guilty of a state jail felony should be punished for a third degree felony if it is shown that a deadly weapon was used during the commission of the offense). Again, we disagree.

Appellant's argument is premised on the contention that he was convicted of a state jail felony that happened to be punishable as a third degree felony under section 12.35(c)(1). He is incorrect. Section 38.04(b) was amended three times in the span of four days in May 2011 and the final amendment reflects that effective September 1, 2011, evading arrest with a vehicle is a third degree felony.[6] Prior to the final amendment, evading arrest with a vehicle was a state jail felony if the actor had a previous conviction under section 38.04. In the final amendment to section

---

[6] *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 391, § 1, 2011 Tex. Gen. Laws 1046; Act of May 24, 2011, 82nd Leg., R.S., ch. 839, § 4, 2011 Tex. Gen. Laws 2110, 2111; Act of May 27, 2011, 82nd Leg., R.S. ch. 920, § 3, 2011 Tex. Gen. Laws 2321, 2322.

38.04(b)(1)(B), the provision for punishment as a state jail felony if the actor used a vehicle while in flight was moved and added to section 38.04(b)(2)(A), classifying the offense as a third degree felony if "the actor uses a vehicle while the actor is in flight."

Resultantly, Appellant's range of punishment began with that range applicable to a third degree felony and was enhanced by two prior felonies under section 12.42(d).[7] Appellant mistakenly argues he was convicted of a state jail felony enhanced to a third degree felony and that section 38.04 of the Code conflicts with section 12.35(c) because both statutes apply to the use of a motor vehicle thereby impermissibly enhancing punishment. He suggests that based on statutory construction, the "internal punishment scheme" of section 38.04 should control over section 12.35(c)(1). Again, Appellant misconstrues the statute. Section 38.04 does not provide a sentencing scheme; rather, it increases the degree of the offense from a state jail felony to a third degree felony when the actor uses a vehicle while in flight.

Appellant's conviction for a third degree felony, regardless of enhancements, subjected him to an affirmative finding on use of a deadly weapon. *See Sierra,* 280 S.W.3d at 254 (citing *Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989) (noting that "all felonies are theoretically susceptible to an affirmative weapon finding of use or exhibition of a deadly weapon")). Because Appellant was convicted of a third degree felony, we need not analyze the legislative intent he presents or whether section 38.04 conflicts with section 12.35(c) as they would only apply to a conviction for a state

---

[7] The punishment under section 12.42(d) is increased to a minimum of twenty-five years.

9

jail felony. We conclude the trial court did not err in including a special issue in the charge allowing for a deadly-weapon finding. Issue two is overruled in its entirety.

ERRONEOUS ADMISSION OF EVIDENCE

By issues three and four, Appellant challenges the trial court's rulings pertaining to the admission of State's Exhibits 1 and 2, both 911 calls. Appellant contends the statements constitute hearsay and violate his right of confrontation of witnesses. We disagree.

We review a trial court's decision to admit evidence for abuse of discretion. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Id.* An appellate court must uphold the trial court's ruling if it is reasonably supported and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

Here, Appellant made a hearsay objection to the admission of State's Exhibit 1, the first 911 call. The trial court overruled the objection and admitted the exhibit. State's Exhibit 2 was not admitted until later in the trial when defense counsel again lodged a hearsay objection. This time, however, he added an objection based on a violation of Appellant's Sixth Amendment right to confront witnesses premised on *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

HEARSAY

Hearsay statements are generally not admissible unless the statement falls within one of the many exceptions. TEX. R. EVID. 801, 803. One exception to Rule 803

is a present sense impression that describes or explains an event or condition, made while or immediately after the declarant perceived it. *Id.* at 803(1). Under this exception, "the contemporaneity of the statement with the event that it describes eliminates all danger of faulty memory and virtually all danger of insincerity." *Fischer v. State*, 252 S.W.3d 375, 379 (Tex. Crim. App. 2008). The risk of falsehood is minimized because the statement is instinctive, not deliberate. *Id.* at 381.

By their respective 911 calls, the convenience store clerk and the customer in the store described an event (a fight between a male and a female) as it was occurring. The State established a foundation for admission of both calls through the records custodian. Both calls were admissible under the present sense exception to hearsay. TEX. R. EVID. 801(1). Accordingly, the trial court did not abuse its discretion in admitting the 911 calls over Appellant's hearsay objections.

CONFRONTATION CLAUSE[8]

Appellant further contends his constitutional right of confrontation of witnesses was violated when the trial court allowed the admission of the two 911 calls because he was not permitted to cross-examine the callers. When the trial began, the custodian of records of the 911 Communication Center testified that the 911 calls were recorded in the regular course of business. Defense counsel made a hearsay objection to State's Exhibit 1, the first 911 call, and chose not to cross-examine the witness. No Confrontation Clause objection was made to State's Exhibit 1. Later in the trial, outside the jury's presence, the court entertained argument on State's Exhibit 2, the second 911

---

[8] Appellant argues in his brief that his Sixth Amendment right to confront witnesses was violated. However, in its brief, the State only responded to Appellant's hearsay argument. Nevertheless, we will address Appellant's contention.

11

call. Defense counsel again made a hearsay objection and, for the first time, raised an additional Confrontation Clause objection. Initially, the trial court sustained the objections to State's Exhibit 2 but shortly thereafter reversed itself and admitted State's Exhibit 2 as not being repetitious of State's Exhibit 1.[9]

The Sixth Amendment to the United States Constitution, which is binding on the states through the Fourteenth Amendment, guarantees a criminal defendant the right to confront the witnesses against him. U.S. CONST. AMEND. VI. The Texas Constitution likewise guarantees that an accused "shall be confronted by the witnesses against him." TEX. CONST. art. I, § 10. Texas courts have consistently interpreted this provision of the Texas Constitution as guaranteeing the same rights afforded by the Sixth Amendment. *Gonzales v. State,* 818 S.W.2d 756, 758 (Tex. Crim. App. 1991).

In *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L. Ed. 2d 177 (2004), the Supreme Court held that, in general, "testimonial" statements of a witness who does not appear at trial and is not, therefore, subject to cross-examination, violate the Sixth Amendment. While the Court did not provide a clear definition of what constitutes a testimonial statement, that term has been interpreted to include "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52. Statements taken by police officers "in the course of interrogations" have also been held to be testimonial. *Id.* Therefore, generally speaking, statements made to the police, shortly after the commission of an offense and upon the arrival of

---

[9] Whereas State's Exhibit 1 provided information from the convenience store clerk on a possible assault, State's Exhibit 2 included the caller's witnessing Appellant evading the officers in a blue vehicle which the trial court found not to be repetitious.

the police at the scene of a crime, are "non-testimonial" if they are not initiated by the police and lack the structure and formality of an official interrogation. *Kearney v. State,* 181 S.W.3d 438, 442 (Tex. App.—Waco 2015, pet. ref'd) (citing *Ruth v. State,* 167 S.W.3d 560, 569 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)).

In *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2274, 165 L. Ed. 2d 224 (2006) (involving the statements of a 911 caller reporting an ongoing domestic assault—just as in this case), the Court determined that the Confrontation Clause does not apply to non-testimonial statements made to police during the course of an ongoing emergency. The Court explained that statements are testimonial "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." The existence and duration of an emergency depend on the type and scope of danger posed to the victim, the police, and the public. *Michigan v. Bryant*, 562 U.S. 344, 370-71, 361 S. Ct. 1143, 1162, 179 L. Ed. 2d 93 (2011). In *Bryant,* the Court held that statements made to the police by a victim found next to his vehicle with a gunshot wound to the abdomen were not testimonial, in part, because the zone of potential victims was greater when issues of public safety were implicated by the use of a gun and the violent nature of the offense. *Id.* at 373-74.

Like other statements made to the police shortly after arriving on the scene of a crime, statements made during 911 calls are evaluated on a case-by-case basis. Calls to 911 have largely been classified as non-testimonial because a "911 call . . . is ordinarily not designed to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827. Calls to 911 may,

however, become testimonial when they are made under circumstances which would lead an objective witness to reasonably believe there is no ongoing emergency and that the statement was being made in the course of a police investigation for the primary purpose of later use in the prosecution of the offense. *Id.* at 822. When applying the primary purpose test, factors courts should consider include: (1) the existence of an "ongoing emergency," (2) the formality and purpose of the questioning, and (3) the statements and actions of both the declarant and interrogators. *Bryant*, 562 U.S. at 366-67.

Here, both 911 calls were for the purpose of reporting an ongoing physical encounter between a male and a female. In this case, the questions asked by the 911 dispatcher and the answers given were of the kind necessary to supply first responders with enough information to respond safely and responsibly. Viewing the totality of the circumstances surrounding the 911 calls in this case, we conclude the primary purpose of the contested statements was to alert law enforcement authorities concerning a current event involving domestic violence and thereby summon immediate police assistance to meet an ongoing emergency involving a threat to someone's personal safety. As such, the contested statements were non-testimonial hearsay statements admissible under the hearsay exception pertaining to present sense impressions. Issues three and four are overruled in their entirety.

CUMULATIVE ERROR

Appellant's fifth and final argument is that cumulative errors by the trial court resulted in a violation of his due process rights. Both federal and state courts have recognized that there are circumstances where the cumulative effect of multiple errors

might warrant reversal even though each individual error was deemed to be harmless. *See U.S. v. Canales*, 744 F.2d 413, 430 (5th Cir. 1984); *Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988); *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082, 145 L. Ed. 2d 678, 120 S. Ct. 805 (2000) (recognizing the doctrine of cumulative error but finding no authority for the proposition that non-errors can in their cumulative effect cause error). Having concluded the trial court did not err in admitting the 911 calls, there is no cumulative error requiring an analysis of Appellant's argument. *See generally Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J. concurring) (noting that cumulative error occurs when "multiple errors synergistically achieve 'the critical mass necessary to cast a shadow upon the integrity of the verdict'") (citing *Williams v. Drake*, 146 F.3d 44, 49 (1st Cir. 1998)). Issue five is overruled.

CONCLUSION

Having overruled Appellant's five issues, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Publish.