

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1545-13

### MARK RANDALL BRISTER, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### ORANGE COUNTY

JOHNSON, J., delivered the opinion of the Court in which MEYERS, WOMACK, COCHRAN, and ALCALÁ, JJ., joined. PRICE, J., concurred. KELLER, P.J., and KEASLER and HERVEY, JJ., dissented.

### O P I N I O N

A jury convicted appellant of felony driving while intoxicated (DWI), found that appellant did "use or exhibit a deadly weapon, to wit: a motor vehicle during the commission of the offense or during immediate flight therefrom," and assessed punishment at forty years' imprisonment. On direct appeal, appellant claimed that the evidence was legally and factually insufficient to support the deadly-weapon finding. The court of appeals sustained that claim, struck the portion of the trial court's judgment that found use or exhibition of a deadly weapon, and affirmed the judgment as modified. *Brister v. State*, 414 S.W.3d 336 (Tex. App.—Beaumont 2013). Both the state and Brister

petitioned this Court.  We affirm the judgment of the court of appeals.

## I. Facts

Before trial, the state announced its intention to seek a deadly-weapon finding.  The arresting officer, Warner, testified that he conducted a traffic stop of the vehicle that was being driven by appellant because appellant "violated a traffic law by crossing the lane of traffic into the on bound traffic."

Q.[state] Okay. Why did you conduct a traffic stop of that vehicle?

A. Because he violated a traffic law by crossing the lane of traffic into the on bound traffic.

Q. Okay. Now, describe for the jury what is that roadway, what does it look like?

A. It's a two-lane roadway, one eastbound lane of traffic, one westbound lane of traffic.

. . . .

Q. Now, when you–when you say he swerved over the yellow line, that means he crossed into–

A. Oncoming traffic.

Q. –oncoming traffic?

A. Yes, sir.

Q. Okay.  Did he do that on just one occasion or more than one occasion?

A. As I recall, just one.

Q. Okay.  How far behind him were you?

A. I was approximately ten car lengths.

. . . .

Q. How was the traffic that–at that time of night?

A. Very few, if any, cars on the roadway.

Q. Okay.  Did you notice anything unusual when you approached Mr. Brister's vehicle?

A. No, sir.

. . . .

Q.[defense] . . .. How long did he take before he stopped?

A. That's a very short distance from that 100-block to the intersection, so maybe less than a quarter mile.

Q. And it was at an unusually long distance, or was that fairly normal?

A. For the area of the roadway I would say it was normal.

Q. Okay. So, if he normally in a normal manner drove up and turned into—and did he turn into the convenience store parking lot?

A. It's a strip mall, convenience store area.

Q. So, he turned into the convenience store parking lot; and he was normal by the distance that he drove. From the time you saw him go across the lane, he didn't drive in a bad manner after the initial bobble; is that correct?

A. Correct.

Q. And, so, that was normal driving from the time you activated your lights forward, fair?

A. Correct.

Q. These two things, are they consistent with sobriety?

A. Sure. Yes.

Q. So, consistency with sobriety while he was driving. It's not unusual for someone to make a mistake while driving down the road, but he made one and alerted you, correct?

A. Correct.

Q. But he soberly drove and–and turned off the roadway into the parking lot?

A. He drove and turned off the roadway, yes.[1]

Two other officers testified that the type of car that appellant was driving is capable of

---

[1] III R.R. 16, 18, 19, 34-35.

causing serious bodily injury or death, but neither saw appellant driving. *Brister*, 414 S.W.3d at 340. After the jury returned its verdict on punishment, the trial court sentenced appellant and included in its judgment a deadly-weapon finding.

## II. Court of Appeals's Opinion

After noting that the state "offered no evidence to attempt to show that Brister's operation of the vehicle during the offense put another person or motorist in actual danger[,]" the court of appeals determined that the evidence was insufficient to support the deadly-weapon finding. *Id.* at 344. "The record evidence, viewed in a light most favorable to the prosecution, does not support a conclusion that a rational trier of fact could have found the legal elements of using the vehicle as a deadly weapon beyond a reasonable doubt." *Id.*

## III. Grounds for Review

We refused appellant's petition for discretionary review, but granted the state's two grounds for review.

1.  For purposes of a deadly weapon finding, does the fact of an intoxicated driver establish that the vehicle was driven in a manner capable of causing death or serious bodily injury when driving while intoxicated is dangerous per se and thus presents a real risk to the driver?

2. In a DWI case, is evidence that Appellant unlawfully crossed over the center line into oncoming traffic, with an officer traveling ten car lengths behind him, sufficient to prove a real risk to others for purposes of a deadly weapon finding?

## IV. Argument of the Parties

Although the state concedes that the evidence with regard to "manner" must establish that a vehicle was driven in a manner that was capable of causing death or serious bodily injury in order

to sustain a deadly-weapon finding,[2] it argues that the Texas Legislature has determined that driving with a blood-alcohol concentration (BAC) of .08 or more or without the normal use of mental or physical faculties due to alcohol, drugs, or a combination of both, is *per se* dangerous and reckless.[3] It asserts that, therefore, "it should be unnecessary to require demonstrative evidence of discernibly dangerous or reckless driving . . .." State's brief at 8. And although the state acknowledges that this Court has said that others must have been endangered, and that "a hypothetical potential for danger had others been present is insufficient,"[4] it argues that "others" is not limited to persons other than the driver, but should include the driver. *Id.* at 9, 13. The state then reasons that, because the act of driving while intoxicated satisfies the "manner" requirement and driver endangerment satisfies the "capability" requirement, "a deadly weapon finding is authorized in every felony DWI case." *Id.* at 11.

Appellant asserts that, by the plain language of the statute, only firearms and anything "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" are deadly weapons *per se*. This Court "has expressly rejected the notion that the hypothetical potential for danger is sufficient to meet the statutory definition" and that, "absent a showing that another person was put in actual danger, a deadly-weapon finding is not justified."[5] Appellant's brief

---

[2] *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.–Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001).

[3] We note that the DWI statute does not require a *mens rea*. We also note that, contrary to the state's argument, the legislature did not determine that a BAC of .08 is *per se* dangerous and reckless; a BAC of .08 is merely the level that the legislature defined as "intoxicated." TEX. PENAL CODE § 49.01(2)(B).

[4] State's brief at 6.

[5] Appellant also notes that the legislature has not chosen to preclude court-ordered probation for such an offense by including felony DWI in section 3g. He suggests that requiring every felony DWI conviction to include a deadly-weapon finding would have the absurd consequence of precluding court-ordered probation in every case and that cannot be what the legislature intended.

at 5-6. Appellant contends that the state is asking this Court "to create a new species of 3g offense without the consent of the legislature" and that permitting a deadly-weapon finding in every felony DWI case would run afoul of legislative intent and lead to absurd consequences. Appellant's brief at 4-5. Appellant also asserts that, based on the record in this case, there was no evidence that any other vehicle or pedestrian was harmed or placed in danger by his driving or that his driving was unsafe in any way. Appellant concludes that no rational fact-finder could conclude that the manner and use of his vehicle constituted a deadly weapon. Appellant's brief at 5.

**V. Analysis**

Appellate courts "review the record to determine whether, after viewing the evidence in the light most favorable to the [verdict], any rational trier of fact could have found beyond a reasonable doubt that the [vehicle] was used or exhibited as a deadly weapon." *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). In this case, the court of appeals noted that its "duty, as a reviewing court, is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the factfinder." *Brister,* 414 S.W.3d at 342 (internal quotation marks and citations omitted).

In *Sierra v. State*, 280 S.W.3d 250, 254, 256-57 (Tex. Crim. App. 2009), this Court stated that a "deadly-weapon finding is justified if a rational jury could have concluded that the appellant's vehicle posed an actual danger of death or serious bodily injury." In *Drichas v. State*, 175 S.W.3d 795, 797-98 (Tex. Crim. App. 2005), this Court held that an "actual danger means one that is not merely hypothetical." *Drichas* posed a question of whether there was sufficient evidence of his use or exhibition of a motor vehicle as a deadly weapon. We pointed out that "[o]bjects that are not usually considered dangerous weapons may become so, depending on the manner in which they are

used during the commission of an offense," and that a "motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Id.* at 798 (citations omitted). Based upon the manner of Drichas's use of his truck, including driving the wrong way on a highway during a high-speed chase, failing to yield to oncoming vehicles, numerous traffic offenses, and abandoning his truck while it was still in motion, we determined that there was legally sufficient evidence that Drichas's truck was a deadly weapon, he used it while committing an offense, and that such use posed a danger to others that was real and more than hypothetical. *Id.* at 797-98.

In order to sustain a deadly-weapon finding, the evidence must demonstrate that: 1) the object meets the definition of a deadly weapon; 2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and 3) other people were put in actual danger. *Id.* at 798. "Others" connotes individuals other than the actor himself, and danger to the actor alone does not meet the requisite standard of deadly-weapon use.[6] Thus, the reviewing court must determine that, viewed in the requisite light, no rational trier of fact could have found these requirements beyond a reasonable doubt. In the instant case, the court of appeals conducted just such an analysis. *Brister*, 414 S.W.3d at 344.

By statute, a motor vehicle is not a deadly weapon *per se*, but it can be found to be one if it is used in a manner that is capable of causing death or serious bodily injury. Therefore, sufficiency of the evidence is dependent upon the specific testimony in the record about the manner of use. The statutory elements of DWI require "operating" a motor vehicle, thus it is possible to commit the

---

[6] Webster's New College Dictionary defines "others" as "people aside from oneself" and "the remaining ones of several." WEBSTERS II: NEW COLLEGE DICTIONARY 776 (1999).

offense of DWI without driving.[7]

The state asserts that the basis for a deadly-weapon finding is the danger created by the act of driving while intoxicated and advocates for a deadly-weapon finding in all felony cases of DWI without the need for reviewing the specific evidence. If we take that argument to its logical end, any intoxicated driver, whether "operating" a vehicle on a crowded freeway, on a deserted public roadway, or while napping in a rest area with the key in the ignition, presents an actual danger to any "other," fore or aft, near or far, including the driver, and thus any and all DWI charging instruments, felony or misdemeanor, should include a deadly-weapon allegation. We are unpersuaded that such an across-the-board holding of use of a deadly weapon is appropriate for all situations in which driving while intoxicated is alleged.

The court of appeals properly analyzed the evidence in determining whether there was sufficient evidence to support the jury's deadly-weapon finding. It concluded that, based upon the record evidence, "no reasonable inference arises that [appellant] used the motor vehicle as a deadly weapon on the night in question because the State failed to show that [appellant]'s use of his motor vehicle placed others in actual danger of death or serious bodily injury." *See Brister*, 414 S.W.3d at 344.

We have reviewed the record, and we find that the testimony reflects that, on a single

---

[7] The offense of driving while intoxicated occurs when a "person is intoxicated while operating a motor vehicle in a public place" and does not include an element of deadly-weapon use or exhibition, even when charged as a felony. *See* TEX. PENAL CODE §§ 49.04 and 49.09(b). We also note that evidence has been held sufficient to affirm driving while intoxicated convictions when the motor vehicle was not even in motion. *See*, *e.g.*, *Hearne v. State*, 80 S.W.3d 677 (Tex. App.–Houston [1st Dist.] 2002, no pet.) (defendant asleep in driver's seat of parked vehicle with running engine and gearshift in "park"); *Freeman v. State*, 69 S.W.3d 374 (Tex. App.–Dallas 2002, no pet.) (defendant sleeping in stopped vehicle with front tire against curb and motor running). In the context of the unauthorized use of a motor vehicle, we have held "that while driving does involve operation, operation does not necessarily involve driving." *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995).

occasion, appellant briefly crossed the center line into the oncoming lane of traffic at a time at which there were very few, if any, cars in that lane. After the officer activated his emergency lights, appellant committed no other traffic offenses and appropriately stopped. There is no testimony that appellant caused another vehicle or person to be in actual danger. On this record, the court of appeals correctly determined that there was no reasonable inference that appellant used his motor vehicle as a deadly weapon. We overrule the state's grounds for review.

## VI. Conclusion

We affirm the judgment of the court of appeals.

Delivered: December 10, 2014
Publish