# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00280-CR

**James Nicholas Guzman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT NO. 74109, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Nicholas Guzman was charged with evading arrest by using "a motor vehicle while in flight from" a police officer. *See* Tex. Penal Code § 38.04(a) (setting out elements of offense), (b)(2) (specifying that offense is third-degree felony if actor uses vehicle). Later, the State filed a notice of its intent to seek a finding that Guzman "use[d] and exhibit[ed] a deadly weapon, to-wit: a motor vehicle" during the offense. Guzman entered a guilty plea regarding the underlying allegations but requested that the district court determine whether he used or exhibited a deadly weapon during the offense. After considering the evidence, the district court entered a deadly-weapon finding and sentenced Guzman to four years' imprisonment. *See id.* § 12.34 (setting out permissible punishment range for third-degree felony). In a single issue on appeal, Guzman contends that the evidence is legally insufficient to support the district court's deadly-weapon finding. We will affirm the district court's judgment of conviction.

**GOVERNING LAW AND STANDARD OF REVIEW**

Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

Regarding a deadly-weapon finding, the Penal Code defines "'[d]eadly weapon,'" in relevant part, as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). "In order to sustain a deadly-weapon finding, the evidence must demonstrate that: 1) the object meets the definition of a deadly weapon;

2

2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and 3) other people were put in actual danger." *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014). "'Others' connotes individuals other than the actor himself, and danger to the actor alone does not meet the requisite standard of deadly-weapon use." *Id.* In addition, "[o]bjects that are not usually considered dangerous weapons may become so, depending on the manner in which they are used during the commission of an offense," and a "motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). "Specific intent to use a motor vehicle as a deadly weapon is not required." *Id.* Further, when evaluating "the manner in which the defendant used the motor vehicle" and when determining whether a "defendant's driving was reckless or dangerous," reviewing courts can consider, among other things, "(1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle." *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, pet. ref'd) (mem. op.).

## DISCUSSION

As set out above, Guzman pleaded guilty to the offense of evading arrest but requested that the district court determine whether he used a deadly weapon during the offense.[1] On appeal, Guzman challenges the sufficiency of the evidence supporting the district court's

---

[1] We note that Guzman signed a judicial confession admitting that he "committed each and every act alleged" in the indictment. Although the parties agreed to allow the district court to determine if Guzman used or exhibited a deadly weapon during the offense, the judicial confession does state that "[a]ll deadly weapon allegations are true and correct."

deadly-weapon finding and urges that there is no evidence showing "even a potential danger to others." Accordingly, Guzman asserts that "the deadly weapon finding should be deleted from the judgment of conviction." *See Williams v. State*, 970 S.W.2d 566, 566 (Tex. Crim. App. 1998) (deleting deadly-weapon finding when there was insufficient evidence showing that defendant used or exhibited deadly weapon during offense).

Although no witnesses were called to testify during the punishment hearing, a video recording from a police officer's dashboard camera was admitted into evidence, and the district court reviewed that video before making its determination. *See Carroll v. State*, 975 S.W.2d 630, 631 (Tex. Crim. App. 1998) (explaining that after defendant enters guilty plea, proceeding "becomes a 'unitary trial' to determine the remaining issue of punishment" (quoting *Ricondo v. State*, 634 S.W.2d 837, 841 (Tex. Crim. App. 1982) (op. on reh'g))). On the video, the officer is depicted responding to a call from dispatch at a high rate of speed. From the time that the officer turned onto a five-lane road, including one turn lane, to the time that Guzman's car was stopped on that road, approximately two-and-a-half minutes passed. While driving to catch up to Guzman, the officer passed several cars traveling in both directions on the road. When Guzman's vehicle first appears on the video, the vehicle is seen traveling at a high rate of speed and straddling two lanes of traffic with the tires from each side of the car being well within two separate lanes, and Guzman continued to straddle the lanes as the officer approached. After the officer caught up with Guzman, Guzman continued to drive in two lanes of traffic, made no effort to stop, ran a red light without braking, and crossed through that intersection immediately after a car traveling in the opposite direction had turned left at the intersection and crossed through the lanes that Guzman was driving in. On the other side of the intersection and while still straddling two lanes of traffic, Guzman lost

4

control of his car after attempting to turn right without slowing down, swerved off of the roadway immediately after applying his brakes once he lost control of the car, crossed several lanes of traffic, and crashed into a utility pole. After the collision, the officer interacted with Guzman, and Guzman sounded disoriented, could not remember if his girlfriend was in the car or was at home, and admitted initially that he did not know where he was.[2]

Given that the video chronicles Guzman driving at a high rate of speed on a road with drivers traveling in both directions, straddling two lanes of traffic for an extended period of time, running a red light without braking immediately after a car had turned left and passed through the intersection across the lanes that he was traveling in, losing control of his vehicle, and crashing his car into a utility pole and in light of the reasonable inferences that could be made from that evidence, including that Guzman passed the cars traveling in the same direction as him while driving unsafely in two lanes of traffic, we can easily conclude that there was legally-sufficient evidence supporting the district court's determination that the manner in which Guzman was driving his vehicle when he attempted to evade arrest was capable of causing death or serious bodily injury and that other drivers were put in actual danger. *Compare Drichas*, 175 S.W.3d at 797-98 (determining that there was sufficient evidence to support deadly-weapon finding where defendant drove wrong way

---

[2] During the punishment hearing, the district court asked Guzman if he had any objections or wanted any changes made to the presentence investigation report, and Guzman stated that he had no objection. *Cf. Tolbert v. State*, Nos. 01-10-00536-CR, -00537-CR, -00538-CR, 2011 WL 3359718, at *2-3 (Tex. App.—Houston [1st Dist.] Aug. 4, 2011, pet. ref'd) (mem. op., not designated for publication) (explaining that trial court may take judicial notice of fact in presentence investigation report in absence of objection and that if there is no objection regarding accuracy of fact in report, no additional proof regarding fact need be offered). The report specified, among other things, that Guzman "reached the speed of 137 miles per hour" and that "the odor of an alcoholic beverage was emitting from" Guzman's "mouth and his eyes were bloodshot and glassy."

on highway during high-speed chase, failed to yield to oncoming traffic, committed numerous traffic offenses, lost control of his car, drove erratically, "wove between lanes and within lanes," and abandoned his vehicle while it was still moving "allowing the truck to roll into a parked van, which then hit a mobile home"), *Schwalback v. State*, Nos. 02-14-00216-CR, -00217-CR, 2015 WL 601746, at *2 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for publication) (explaining that jury could have found that any one or more of following actions supported deadly-weapon finding: "backing out of the parking spot at a high rate of speed," accelerating towards officer "while he was still in front of the vehicle," "speeding down residential streets on a flat tire," "running through a red light at a busy intersection," and "driving through a field and down a jogging trail where there were pedestrians"), *Rose v. State*, No. 11-10-00104-CR, 2012 WL 1380406, at *2-3 (Tex. App.—Eastland Apr. 19, 2012, no pet.) (mem. op., not designated for publication) (finding evidence to be legally sufficient to support deadly-weapon determination when evidence established that defendant was intoxicated, failed to control his vehicle, and crashed into parked car; that there was "short amount of time between [defendant]'s braking and the impact," which supported inference that defendant was driving recklessly; that "there were other motorists present at the same time and place as the reckless driving"; and that defendant "rear-ended a vehicle with two occupants inside"), *and Moore v. State*, No. 02-09-00192-CR, 2010 WL 4677272, at *8 (Tex. App.—Fort Worth Nov. 18, 2010, pet. ref'd) (mem. op., not designated for publication) (deciding that evidence was sufficient to support deadly-weapon finding where record showed, among other things, that defendant failed to control speed and spun his truck around, crashed into building, drove into oncoming traffic and never attempted to return to correct lane, drove at officer's car and barely missed it, and "caused several accidents and drove away from them"),

*with Brister*, 449 S.W.3d at 495 (concluding that there was insufficient evidence where evidence showed that "on a single occasion" defendant "briefly crossed the center line into the oncoming lane of traffic at a time in which there were very few, if any, cars in that lane" and where evidence showed that defendant committed no other traffic offenses and promptly pulled over after police activated emergency lights), *and Balkissoon v. State*, No. 03-13-00382-CR, 2016 WL 1576240, at *6 (Tex. App.—Austin Apr. 13, 2016, no pet.) (mem. op., not designated for publication) (ruling that evidence was legally insufficient to show that driver placed others in danger when evidence established that only vehicles in area were driver's car and police officer's car, that officer did not have to take evasive action to avoid defendant, that officer was not in "'actual danger' of colliding with" defendant's vehicle at any time, and that defendant "was not speeding, weaving, swerving, or drifting on the road"). In fact, to contend otherwise borders on frivolous.

For these reasons, we overrule Guzman's issue on appeal.

## CONCLUSION

Having overruled Guzman's sole issue on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justice Justices Puryear, Goodwin, and Bourland

Affirmed

Filed: July 22, 2016

Do Not Publish