**MODIFY and AFFIRM; Opinion Filed July 31, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00431-CR

**BRYON RAMONE SCOTT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F14-40662-I**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Schenck

Bryon Ramone Scott appeals his conviction for aggravated robbery with a deadly weapon.

In his first issue, appellant challenges the sufficiency of the evidence to sustain the deadly weapon

finding. In his second and third issues, appellant challenges the trial court's decisions to deny

admission of evidence. In a single cross-issue, the State urges the judgment should be modified

to reflect that appellant used or exhibited a deadly weapon that was not a firearm. We agree and

modify the trial court's judgment and otherwise affirm. Because all issues are settled in the law,

we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

On April 27, 2014, at approximately 9 p.m. at a Family Dollar store, an assistant manager

and a cashier began closing the store for the evening. While the cashier counted money from the

cash register, the assistant manager counted money to place in the store's safe. Appellant, wearing

a black mask and gloves and carrying a gun, suddenly emerged from one of the store's aisles. He then pointed the gun at the assistant manager and demanded both employees remain quiet and give him the money they had been counting. Despite the mask, when he spoke, the cashier recognized appellant as a customer who had visited the store earlier in the day and with whom she had conversed.[1] The cashier dropped to lie down on the floor of the store, while the assistant manager followed appellant's instructions to place the money in a bag. Appellant then demanded the assistant manager open a small safe located within the store's main safe, which she then did. The assistant manager then removed two bags from the internal safe, one containing money and the other keys, and placed them near appellant. Appellant then ordered her to lie down while appellant emptied the safe into a garbage bag. The two employees remained lying down until they heard the bell above the store's door chime, indicating appellant had left the store. The assistant manager then pressed the panic button and called the store manager.

The police arrived at the store almost immediately, and the store manager arrived soon thereafter. The manager reviewed the store's surveillance video with the responding officers, and she told them she recognized the robber as appellant, someone she had dated for a few years. The responding officers sent the surveillance video to the police investigators and transported the assistant manager and cashier to the police department to give their formal statements. The morning after the robbery, the police arrested appellant at his place of employment. At the police station, the assistant manager and cashier each identified appellant as the robber from a blind, sequential, six-person photographic lineup. That same day, the police officers executed a search warrant at appellant's home, where police officers discovered a black-and-gold BB gun that matched the description of the gun used in the robbery.

---

[1] Appellant has a gold tooth that the cashier recalled having seen earlier and that she saw through appellant's mask. Appellant also has a soft voice that she recognized, and he called her "sweetie" both when he spoke to her earlier in the day and later during the robbery. She also recognized his height as just under hers and his build as stocky.

Appellant was indicted for the offense of aggravated robbery with a deadly weapon. The indictment also alleged two prior felony convictions. Appellant pleaded not guilty and proceeded to a trial before a jury who convicted him of the charged offense. The jury found both of the enhancement paragraphs to be true and assessed punishment at 50 years' confinement. Appellant timely filed this appeal.

**DISCUSSION**

## I.      Deadly Weapon Finding

In his first issue, appellant challenges the sufficiency of the evidence to support a finding of a deadly weapon because the BB gun recovered by the police was not loaded and there was no evidence that the gun was loaded at the time of the offense.

When reviewing the record for legal sufficiency, we consider the combined and cumulative force of all admitted evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017).

A person commits aggravated robbery if, in the course of committing theft and with intent to obtain and maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2). Proof of the use or exhibition of a deadly weapon is an essential element of the offense of aggravated robbery. *Brown v. State*, 212 S.W.3d 851, 859 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd), *cert. denied*, 552 U.S. 1151. A deadly weapon is defined as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17). To sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the

–3–

statutory definition of a deadly weapon; (2) the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained; and (3) that other people were put in actual danger. *Elder v. State*, 05-13-01111-CR, 2015 WL 581384, at \*2 (Tex. App.—Dallas Feb. 11, 2015, pet. ref'd) (mem. op., not designated for publication).

Embracing appellant's assumption that the jury was obliged to find that the BB gun was the weapon he brandished during his robbery, the record includes an investigating police detective's testimony as to his personal experience with BB guns and "absolutely" believed the BB gun was capable of causing serious bodily injury if fired within close range of another person. The detective read for the jury the following warning label that was displayed on the BB gun's packaging by its manufacturer:

> Danger. Not a toy. Adult supervision required. Misuse or careless use may cause serious injury or death. May be dangerous up to 240 yards or 219 meters.

The detective also read the following warning contained in the instruction manual for the BB gun.

> Warning. Not a toy. Adult supervision required. Misuse or careless use may cause serious injury or death. May be dangerous up to 240 yards or 219 meters.

The assistant manager and cashier testified that appellant pointed the gun directly at them within close range, threatened to kill them, and caused them to fear for their lives. The assistant manager testified that as appellant pointed the gun at her she thought he would pull the trigger and that she would not survive. The cashier also testified appellant held a gun "right down in my face" and that she believed appellant would kill both her and the assistant manager. Both also testified that appellant threatened them, stating that if the assistant manager did not open the safe, "somebody's going to die tonight."

Nonetheless, appellant urges that because there is no evidence the BB gun was loaded, it was not "capable" of causing death or serious injury just by pointing it at another person. He urges

that the evidence does not support a finding of actual rather than merely hypothetical danger because the BB gun was unloaded when the police found it, the police found no ammunition when they found the BB gun, and there was no evidence from which the jury could infer the BB gun was loaded. *Brister v. State*, 449 S.W.3d 490, 495 (Tex. Crim. App. 2014) (concluding that motor vehicle was not deadly weapon because there was no evidence there were any cars in oncoming lane of traffic into which he briefly crossed). However, whether a BB gun is loaded is not significant in a deadly weapon analysis. *Calhoun v. State*, No. 05-17-00026-CR, 2018 WL 258981, at *2 (Tex. App.—Dallas Jan. 2, 2018, pet. ref'd) (mem. op., not designated for publication). Instead, the question is whether the evidence shows that the BB gun is capable of causing serious bodily injury. *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002).

Here, the evidence shows that appellant pointed the gun at the assistant manager and the cashier and threatened to shoot them, and further showed that the gun was capable of causing serious bodily injury. Therefore, the evidence is sufficient to support the deadly weapon finding. *See Calhoun*, 2018 WL 258981, at *3 (sufficient evidence to support deadly weapon finding where record showed appellant pointed BB gun at convenience store clerk and threatened to shoot him, and BB gun's warning label warned "careless use may cause serious injury or death").

We overrule appellant's first issue.

## II.    Evidentiary Rulings

In his second and third issues, appellant contends the trial court erred by refusing to allow impeachment of the assistant manager and the cashier with evidence that they were not certain of their identification of appellant as the robber. At trial, defense counsel cross-examined the assistant manager and the cashier on their respective identification of appellant from a photographic lineup and asked each if she selected someone other than appellant. When each

witness denied identifying anyone but appellant as the robber, defense counsel requested to show video recordings of each witness's review of the lineup. The trial court denied both requests.

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule of Evidence 103 by making an "offer of proof" that sets forth the substance of the proffered evidence. TEX. R. EVID. 103; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Id.* at 890. To preserve the record for appeal, the party offering the excluded evidence may make an offer of proof in the form of a concise statement or in question and answer form. *Id.* at 889.

Here, the record does not contain a copy of either video or any offer of proof for appellate review. Accordingly, appellant failed to preserve his second and third issues regarding the trial court's evidentiary rulings for review.

Additionally, appellant urges that the trial court's evidentiary rulings amounted to a violation of his constitutional right to confront witnesses under the Sixth Amendment. However, appellant failed to make this objection at trial and thus waived this argument on appeal. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding defendant's objection encompassing complaints under rules of evidence and Confrontation Clause not sufficiently specific to preserve error). We overrule appellant's second and third issues.

## III.    Modification of Judgment

In a single cross-issue, the State urges the judgment should be modified to correctly reflect that appellant used or exhibited a deadly weapon that was not a firearm. The judgment reflects in response to "findings on a deadly weapon: yes, a firearm." The record supports the conclusion that the deadly weapon appellant used or exhibited during the robbery was a BB gun, not a firearm. *See Adame*, 69 S.W.3d at 586 (Johnson, J., concurring) (noting BB gun fires projectiles with

energy from compressed air rather than from explosion or burning material as required by definition of "firearm" in penal code (citing TEX. PENAL CODE ANN. § 46.01 (3))).

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Accordingly, we modify the judgment to read, "findings on a deadly weapon: yes, not a firearm."

## CONCLUSION

We affirm the trial court's judgment as modified.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47

180431F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRYON RAMONE SCOTT, Appellant

No. 05-18-00431-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F14-40662-l.
Opinion delivered by Justice Schenck,
Justices Lang-Miers and Evans
participating.

     Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:
     "findings on a deadly weapon: yes, not a firearm."
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 31st day of July, 2018.