

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00105-CR
No. 02-18-00114-CR
_____

JERRY LYNN BROWN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court Nos. CR17-0276, CR17-0275

---

Before Sudderth, C.J.; Gabriel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Jerry Lynn Brown, who turned fifty-eight years old during his trial, surfed match.com while working away from home and then divorced his wife after meeting a woman he described as "the most beautifulest" woman he had ever seen.[1] He moved into her house. But after the $55,000 he entrusted to her disappeared, he searched the house for clues to the money's whereabouts and discovered her medical records, which revealed to him for the first time that she was formerly a he. According to Brown, his resulting mid-life crisis led him on a crime spree of bank robberies and car thefts.

A few days after one of the bank robberies,[2] Brown stole a car from a dealership after a test drive, dragging a salesman whose hand was caught in the vehicle's door as he did so. Brown was indicted for aggravated robbery with a deadly weapon (the car-theft case at issue here)[3] and for robbery (the bank-robbery case at issue here). *See* Tex. Penal Code Ann. § 29.02. He pleaded guilty to the lesser-

---

[1]Brown offered, and the trial court admitted into evidence, a photo of the paramour, which tends to confirm his description.

[2]The two offenses at issue in this case were part of a several-day crime spree that included another bank robbery and car theft.

[3]The indictment in the car-theft case alleged that on or about April 3, 2017, while in the course of committing theft of property and with the intent to obtain or maintain control of said property, Brown intentionally, knowingly, or recklessly caused bodily injury to Jason Little by dragging him with a motor vehicle and used or exhibited a deadly weapon (the motor vehicle).

included offense of robbery in the car-theft case and to robbery in the bank case, deferring the issue of whether he used a deadly weapon (the vehicle that he had stolen) in the car-theft case until punishment in a trial to the bench. At the trial's conclusion, the trial court made an affirmative finding on the deadly-weapon allegation and sentenced Brown to concurrent sentences of 50 years' confinement in the car-theft case and 20 years' confinement in the bank robbery case.

In a single issue, Brown argues that the evidence is insufficient to support the affirmative finding that he used a deadly weapon in the car-theft case, arguing that there was no evidence that the vehicle he stole had more than a hypothetical capability of causing death or serious bodily injury.[4] The State responds that the evidence is sufficient to support the trial court's finding that the vehicle was a deadly weapon because its manner of actual—not just intended or hypothetical—use was capable of causing serious bodily injury or death to the salesman and to others present.

A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). To sustain a deadly-weapon finding, the evidence must show that: (1) the object meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and (3) other people were put in actual danger. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014). The

---

[4]A deadly-weapon finding affects a convicted felon's parole eligibility, among other things. *See Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017).

statute does not require that the actor actually intend to cause death or serious bodily injury. *Moore*, 520 S.W.3d at 908. We view all of the evidence in the light most favorable to the judgment to determine whether any rational factfinder could have found beyond a reasonable doubt that the vehicle was used or exhibited as a deadly weapon. *See Brister*, 449 S.W.3d at 493 (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (sufficiency standard).

A motor vehicle is not a deadly weapon per se, but it may be found to be one if it is used in a manner that is capable of causing death or serious bodily injury. *Brister*, 449 S.W.3d at 494. The sufficiency of the evidence depends on the specific testimony in the record about the vehicle's manner of use. *See id.* at 494–95 (holding evidence insufficient to support deadly-weapon finding when testimony did not reflect that the DWI defendant caused another vehicle or person to be in actual danger: he briefly crossed the center line into the oncoming lane of traffic when there were few, if any, cars in that lane, he committed no other traffic offenses, and he appropriately stopped after the officer activated his emergency lights); *see also Moore*, 520 S.W.3d at 908 (stating that to justify a deadly-weapon finding under penal code section 1.07(a)(17)(B), "the State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury; only that 'the manner' in which it was either used or intended to be used was '*capable*' of causing death or serious bodily injury"). The court of criminal appeals has held that testimony about a

4

near head-on collision suffices to establish more than a mere hypothetical danger of death or serious bodily injury to another. *Moore*, 520 S.W.3d at 909 (referencing *Mann v. State*, 58 S.W.3d 132, 132 (Tex. Crim. App. 2001)). Likewise, if the record reflects that the defendant's driving was reckless or dangerous during the felony's commission—such as speeding or failing to control the vehicle or apply the brakes—and actually caused serious bodily injury, the evidence is sufficient to support the deadly-weapon finding. *See id.* at 910 (discussing *Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009)); *Johnston v. State*, 115 S.W.3d 761, 764 (Tex. App.—Austin 2003) ("An alleged deadly weapon's capability of causing death or serious bodily injury in the manner of its use must be evaluated in light of the facts that actually existed when the felony was committed."), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).

A defendant uses his motor vehicle in a manner that is capable of causing death or serious bodily injury, even when no actual death or serious bodily injury occurs and regardless of his intent, when there is more than a hypothetical potential for danger if others are present. *Moore*, 520 S.W.3d at 913 (holding that the manner in which the appellant used his motor vehicle placed others in substantial danger of death or serious bodily injury, even if no one was actually seriously hurt, when he drove while intoxicated and rear-ended a vehicle that was stopped at a red light on the service road of a highway, causing a chain reaction of collisions that pushed a third vehicle into an intersection when cars in the intersecting roadway had the right-of-way).

5

Brown testified that he was under the influence of hydrocodone and Xanax when he committed the bank and car robberies. A few days after robbing the bank, Brown stole a pickup from a dealership after the salesman offered to let him test drive the vehicle. However, because the salesman retained the key fob (the vehicle was keyless), after Brown absconded with the pickup, it would not run outside the fob's presence after the engine was turned off. When the pickup finally ran out of gas, Brown abandoned it at a store near Southwest Volkswagen, presenting a convenient opportunity for Brown to steal a replacement vehicle.

When Brown arrived at Southwest Volkswagen, he met car salesman Jason Little, who allowed him to test drive a Mustang. After completing the test drive, Brown waited until Little got out before he sped away. Little gave chase, and as he grabbed ahold of the Mustang, his hand became stuck in the passenger-side door handle. Little testified that after his hand finally broke free, momentum carried him forward into a parked vehicle, causing him minor injuries and some damage to the parked vehicle.

The dealership's surveillance video corroborates Little's version of events, showing the point at which Brown pulls away in the Mustang, with Little running alongside it. It shows the Mustang's velocity increase and then Little being flung like a rag doll into some parked cars at the point Brown made his escape. Additionally, it provides a depiction of the general scene that day—a sunny Monday afternoon in

April, with salesmen and customers walking in and out of the showroom and the occasional vehicle driving through the lot.

Little described himself as very scared and very shocked when Brown started driving away with him attached to the vehicle, and that while his injuries ultimately were minor, he could have been hurt a lot worse. He also testified that he occasionally suffered joint pain as a result of the incident. On cross-examination, he acknowledged that Brown might not have realized that his hand was caught and that Brown could have thought he was just running alongside the vehicle to get Brown to stop.[5]

Based on Little's testimony alone, viewed in the light most favorable to the deadly-weapon finding, the trial court could have found beyond a reasonable doubt that Brown used the vehicle as a deadly weapon as to Little, who only serendipitously suffered minor, rather than more serious, injuries when he was dragged and flung into a parked vehicle. But based on the video evidence depicting other drivers and pedestrians at the dealership, entering and exiting the showroom from the car lot at or around the time of the theft, the trial court could also have found that others besides Little were put in actual danger from a vehicle driven by a man on painkillers who was

---

[5]Brown testified that he had seen Little running beside the car but did not see that his hand was caught in the door. Brown said he had been completely clear of Little before he tried to drive away and that it had not been his intention to hurt Little. *Cf. Moore*, 520 S.W.3d at 908 (stating that the actor does not have to actually intend to cause death or serious bodily injury).

attempting to escape in a stolen Mustang. *See Brister*, 449 S.W.3d at 494 (reciting as an element to sustain a deadly-weapon finding that "other people were put in actual danger," but holding that testimony did not reflect the presence of others to endanger by appellant's driving); *cf. Johnston*, 115 S.W.3d at 764 (holding that a lit cigarette used to intentionally burn a child "could only be capable of causing death or serious bodily injury if used in a manner different from that supported by the record").

Brown's goal was to take a vehicle, and he did so without regard to Little's safety or the safety of anyone else on the car lot, presenting a more-than-hypothetical potential for danger to the dealership's employees and customers, even if the only actual injuries suffered that day were minor. *See Moore*, 520 S.W.3d at 908, 913. Accordingly, we overrule Brown's sole issue and affirm the trial court's judgments.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 14, 2019

8