

# NUMBER 13-20-00530-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LENARD MITCHELL BAITES,                               **Appellant,**

**v.**

THE STATE OF TEXAS,                                   **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Tijerina**

A jury found appellant Lenard Mitchell Baites guilty of: (1) unauthorized use of a vehicle, a state jail felony; (2) unlawful possession of a firearm by a felon, a third-degree felony; (3) two counts of theft of a firearm, a state jail felony; and (4) criminal mischief, a state jail felony. *See* TEX. PENAL CODE ANN. §§ 28.03(b)(4)(A), 31.03(e)(4)(C), 31.07, 46.04(a). The trial court sentenced him to two years' incarceration for the unauthorized

use of a vehicle offense, ten years for the unlawful possession of a firearm by a felon offense, two years for each of the theft of a firearm offenses, and ten years for the criminal mischief offense, with the sentences to run concurrently. *See id.* §§ 28.03(b)(4)(A), 31.03(e)(4)(C), 31.07, 46.04(e).[1] By two issues, Baites argues that: (1) the evidence was insufficient to establish that he operated the vehicle as alleged in the indictment; and (2) the deadly weapon instruction was erroneous because the statute does not apply to inanimate objects, and there was no threat to human beings during the commission of criminal mischief. We affirm.

## I.   BACKGROUND

Baites was accused of stealing a brown 2015 Chevrolet Silverado and a 9-millimeter Makarov pistol from a Jeep in an apartment complex in El Campo, Texas. The items were both recovered the next morning in the neighboring town of Telferner.

At trial, Deputy Lance Crull testified that on December 14, 2018, he was on patrol with the Victoria County Sheriff's Office (VCSO) when he observed a brown Chevrolet on the shoulder of the road, which appeared inoperable. The driver's side door was open, and Baites was standing in the doorway. As he continued his route, Deputy Crull learned from dispatch that shots were fired into a brown vehicle, which he surmised was the brown Chevrolet he had just passed.

---

[1] The unlawful possession of a firearm offense was punished as a second-degree felony due to the trial court's finding that Baites had previously been convicted of a felony other than a state jail felony. *See* TEX. PENAL CODE ANN. § 12.42(a). The criminal mischief offense was punished as a second-degree felony due to the trial court's findings that: (1) a deadly weapon was used or exhibited during the commission of the offense, and (2) Baites had previously been convicted of a felony other than a state jail felony. *See id.* §§ 12.35(c)(1), 12.425(c).

2

Investigator Randy Williams with the VCSO testified that on December 14, 2018, he received a call regarding the burglaries of several motor vehicles in El Campo that allegedly occurred the night before. On his way to investigate the burglaries, he was rerouted to Telferner to assist Deputy Crull at the scene. When he arrived, he noticed the windows to the brown Chevrolet were shattered, and there were bullet holes in the door. Investigator Williams stated that he helped identify two weapons nearby on the side of the road, a 9-milimeter Makarov pistol and a .38 revolver—both were linked to the burglaries of the vehicles in El Campo.

VCSO Sergeant Jacob Valdez testified that he was on his way to investigate the burglaries in El Campo when he noticed bullet holes in the Chevrolet as he drove past it. His dash camera video was displayed for the jury and admitted into evidence. The video shows the Chevrolet parked on the median in between the on-ramp and the frontage road, and Baites can be seen walking away from the truck and up the on-ramp. Sergeant Valdez noticed that Baites showed signs of intoxication, and he was eating potato chips. Baites told him he was from El Campo and was walking towards a nearby town, but Sergeant Valdez recognized that Baites was walking in the opposite direction. Upon searching Baites's pant pockets, Sergeant Valdez recovered some shattered glass, a bag of potato chips, and a pocketknife. Sergeant Valdez stated, "The glass in his pockets appeared to be the same kind of shatter that was inside the vehicle when [he] got back to the vehicle." He noticed the Chevrolet's gas gauge was on "E." Sergeant Valdez subsequently located the 9-millimeter Makarov and a Smith & Wesson snub-nosed

3

revolver in a grassy area within walking distance from where Sergeant Valdez encountered Baites.

Brycen Rodgers testified that on December 14, 2018, he was working at a Telferner grocery store when Baites walked in asking for a gas can because his truck had broken down. After Baites told Rodgers that he lost his keys, Rodgers drove him to the location of the Chevrolet. On the way, Baites showed Rodgers the 9-milimeter pistol stating he "just got it." According to Rodgers, soon after they arrived, Baites opened fire on the Chevrolet, allegedly in an attempt to retrieve his keys. Rodgers stated he "got a little nervous" when Baites was shooting into the Chevrolet because cars were passing by, but he was trying to stay calm. Once Baites opened the door to the truck, he showed Rodgers two other firearms. Rodgers received a call from his manager to return to work, so he left the scene.

Brandon Hale testified that his Jeep was ransacked in El Campo, and his 9-millimeter Makarov pistol was stolen from it. He stated this pistol was very rare; it required special ammunition specifically made for this type of pistol that was difficult to acquire. Hale identified the shell casings that officers recovered near Baites as those Hale loaded in his 9-millimeter Makarov. Hale testified he recognized the shell casings due to their greenish hue.

VCSO Corporal Ashley Strelec testified that she arrived at the scene and attempted to locate a firearm after observing the shattered windows and bullet holes in the Chevrolet. Corporal Strelec recovered the 9-millimeter Makarov, the .38 Smith &

Wesson, and shell casings. She also said that she found both guns, along with an empty beer can, approximately two feet from the guardrail where officers first observed Baites walking.

Curtis Clapp stated that he was the owner of a brown 2015 Chevrolet Silverado that was stolen from where he resides in El Campo. He stated he keeps an extra key inside the truck for emergencies, and his truck was unlocked. Inside his truck, he had a .38 caliber firearm. When his truck was returned to him, it did not have gas, his ammunition in the backseat was shuffled, his potato chip bag was empty,[2] there was sugar-free gum and cigarettes in the truck, and his pocketknife and loose change were missing. His truck had approximately $6,600 worth of damage. Clapp relayed that he did not give any person consent to use his truck.

In the jury charge, the application paragraph as to criminal mischief asked the jury whether Baites fired at the Chevrolet truck "with a deadly weapon to wit: a firearm or firearms." Baites requested that the trial court withdraw the deadly weapon finding language because there was no evidence that other people were in actual danger. The trial court denied the request because it "believe[d] the testimony" showed there "were several vehicles driving by." The jury found Baites guilty on all counts and returned a verdict that included a deadly weapon finding. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Baites argues that there is insufficient evidence to support the

---

[2] Clapp testified, "Dang, he ate my potato chips."

5

unauthorized use of a motor vehicle conviction. Specifically, he contends the evidence was insufficient to show he "operated" the Chevrolet truck. *See id.* § 31.07(a).

## A.    Standard of Review & Applicable Law

In a sufficiency review, we examine the evidence in the light most favorable to the State to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

In our sufficiency review, "direct evidence of the elements of the offense is not required." *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence, and juries are permitted to make reasonable inferences from the evidence presented at trial and in establishing the defendant's guilt. *Id.* at 14–15. "Circumstantial evidence alone can be sufficient to establish guilt." *Id.* at 15. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (quoting *Hooper*, 214 S.W.3d at 13); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303,

314 (Tex. App.—Corpus Christi–Edinburg 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik*, 953 S.W.2d at 240). As authorized by the indictment in this case, a person commits the offense of unauthorized use of a vehicle if that person intentionally or knowingly operates another's motor-propelled vehicle without the effective consent of the owner. *See* TEX. PENAL CODE ANN. § 31.07(a). *Alfaro v. State*, 616 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

## B. Discussion

Clapp stated that his Chevrolet was stolen from El Campo, and Baites did not have permission to use it. *See Battise v. State,* 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("Testimony that the car owner did not give consent to operate his vehicle can be sufficient to support a finding that an appellant knew he did not have consent to operate the vehicle."). Hale testified that his 9-milimeter Makarov was stolen from his jeep in El Campo. This pistol was rare and required special ammunition made specifically for this pistol.

Deputies Valdez, Williams, and Crull all observed the Chevrolet along the highway, and only Baites was walking within the vicinity. In fact, Officer Crull stated that he observed the Chevrolet's driver's side door open and that Baites was standing in the

7

doorway. Sergeant Valdez found Baites eating the bag of potato chips Clapp stated was in his Chevrolet and recovered a pocketknife and loose change from Baites's pocket— the exact items that Clapp testified were stolen from his truck. Baites informed Sergeant Valdez that he was from El Campo and traveling to a nearby town, yet Baites was walking in the opposite direction.

Furthermore, Rodgers testified that Baites entered a Telferner grocery store and requested assistance because according to him, *his* truck had "run out of gas," and he was unable to locate *his* keys. According to Rodgers, Baites told him he was from El Campo, which is where the Chevrolet and 9-milimeter Makarov were allegedly stolen. Rodgers stated he drove Baites to the Chevrolet where Baites shot into the truck allegedly to retrieve *his* keys. Evidence was presented that police recovered the 9-millimeter Makarov and the .38 Smith & Wesson within ten feet of Baites. Also, Corporal Strelec found several shell casings for the 9-millimeter Makarov at the same location where Baites had been shooting the gun.

Baites argues that the evidence was insufficient because no one saw him drive or operate the Chevrolet. However, the State did not need direct evidence to prove that a person saw Baites drive or operate the Chevrolet. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("[T]he lack of direct evidence is not dispositive of the issue of a defendant's guilt."). Instead, to establish that Baites "operated" the truck so as to support the conviction, the totality of the circumstances must demonstrate that Baites "took action to affect the functioning" of the Chevrolet in a manner that would enable its use. *See*

8

*Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). Here, a rational juror could have found that Baites: (1) stole the 9-milimeter Makarov from Hale's jeep in El Campo; (2) found Clapp's extra key, and stole Clapp's unlocked Chevrolet; (3) drove the Chevrolet with the 9-millimeter Makarov in it to the highway in Telferner where he ran out of gas, (4) walked to the grocery store where he requested assistance, stating he "ran out of gas" and "lost his keys"; (5) led Rodgers to the location of the Chevrolet; and (6) opened fire on the Chevrolet using the 9-milimeter Makarov. *See id.* Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing guilt. *See Hooper*, 214 S.W.3d at 14–15. Viewing the evidence in the light most favorable to the jury's verdict, we find the evidence sufficient to support the jury's finding that Baites operated a motor vehicle without the owner's effective consent. *See* TEX. PENAL CODE ANN. § 31.07(a); *Thomas*, 444 S.W.3d at 8. Accordingly, we overrule his first issue.

### III.   JURY CHARGE ERROR

By his second issue, Baites argues a deadly weapon instruction was not permissible because the weapon used was exhibited on a "nonhuman." *See Prichard v. State*, 533 S.W.3d 315, 321, 330 (Tex. Crim. App. 2017) ("[A] deadly weapon finding is disallowed when the recipient or victim is nonhuman" because "the Legislature's intent was to limit deadly weapon findings for human victims only."). The State agrees the deadly weapon statute theoretically does not apply to inanimate objects but asserts that Rodgers and other people driving by at the time of the shooting were the subject of the jury's deadly

weapon finding; thus, the instruction was not erroneous.

## A.    Standard of Review

In assessing jury charge error in a criminal case, we engage in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We first determine if the trial court's charge contains error. *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If error occurred, then we analyze that error for harm. *Id.* In this case, Baites preserved error "with a timely objection"; therefore, we analyze the jury-charge error for "some harm as a result of the error." *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The "[a]ppellant must have suffered actual harm, not merely theoretical harm." *Id.* at 775; *see* TEX. R. APP. P. 44.2.

## B.    Discussion

### 1.    Jury Charge

The charge of the court, consistent with the indictment, read as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of December, 2018, in Victoria County, Texas, the defendant, LENARD MITCHELL BAITES, did then and there, intentionally and knowingly damage or destroy tangible property namely a Chevrolet Silverado truck . . . by damaging the truck by firing at it with a DEADLY WEAPON to wit: a firearm or firearms, without the effective consent of Curtis Clapp, the owner of the property and did thereby cause a pecuniary loss of $2,500 or more but less than $30,000 to the owner, then you will find the defendant "Guilty" of CRIMINAL MISCHIEF as charged in Count 5 of the indictment.

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of CRIMINAL MISCHIEF as charged in Count 5 of the Indictment and say by your verdict

10

"Not Guilty."

The State "acknowledges that the language of the application paragraph of Count 5 in the jury charge in question is poorly drafted." We agree with the State, and we find error in the jury charge as a proper deadly weapon instruction was not given.[3] *Scales v. State*, 601 S.W.3d 380, 386 (Tex. App.—Amarillo 2020, no pet.) ("Where, as here, the State relies upon a deadly-weapon finding to support the range of punishment it contends applies, an appropriate deadly-weapon instruction should have been given.").

### 2. Harm Analysis

We review harm resulting from error charge in light of four factors: (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 174. "In order to sustain a deadly-weapon finding, the evidence must demonstrate that: 1) the object meets the definition of a deadly weapon; 2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and 3) other people were put in actual danger."[4] *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

---

[3] "Under the facts of this case, a proper jury instruction would have advised the jury that a deadly-weapon finding could only be made if the jury were to determine beyond a reasonable doubt that a deadly weapon was used or exhibited by the defendant against a human being during the course of the commission of the underlying offense or during the immediate flight following the commission of that offense." *Scales v. State*, 601 S.W.3d 380, 386 (Tex. App.—Amarillo 2020, no pet.).

[4] Baites only challenges the third element: whether a human being was put in actual danger. *See Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

Relying on *Prichard* and *Scales*, Baites asserts there was no testimony that he "threatened anyone with the firearm, including himself, or any vehicles passing by on the highway. There was no testimony that any vehicles were passing by at the time [he] shot up the truck."

In *Prichard*, appellant killed his pet dog by repeatedly hitting it in the head with a shovel and then drowning it in a swimming pool. 533 S.W.3d at 319. Other than appellant himself, no humans were involved, and there was no evidence showing that any human had been harmed or placed at risk of harm during the commission of the offense. *Id*. at 331. In *Scales*, appellant killed two dogs by slicing them open with a knife and subsequently injured the dogs' owner on the forehead with the same knife. 601 S.W.3d at 384. The court held the evidence established that a deadly weapon was used against a human during the immediate flight following the commission of the offense. *Id*. at 386. Thus, *Prichard* and *Scales* are factually distinguishable. *See Prichard*, 533 S.W.3d at 331; *Scales*, 601 S.W.3d at 385.

Here, the State argues that the basis for a deadly weapon finding was the endangerment of bystanders driving by and Rodgers, who was within the vicinity of the shooting. At the charge conference, the trial court noted the evidence supported the inclusion of the deadly weapon finding. Contrary to Baites's claim on appeal, Rodgers specifically testified that he "got a little nervous" and was "walking around in circles" when Baites opened fire because "there was [sic] cars passing by." He further stated that although he was not "in the line of fire," he was standing about ten feet away from the

12

shooting. The dash camera video showed vehicles passing the Chevrolet while driving up the on-ramp as Sergeant Valdez arrived at the scene. Because there was evidence that people were driving by, and Rodgers testified that he was within the vicinity, there was evidence to support a finding that "other people were put in actual danger." *See Brister*, 449 S.W.3d at 494.

Given the state of the evidence, even if a correct instruction was given, the jury likely would have found that Baites actually endangered the lives of Rodgers and the bystanders. *See Brister*, 449 S.W.3d at 492; *see also Galindo v. State*, 564 S.W.3d 223, 227 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (affirming a deadly weapon finding because there was evidence that showed the nonhuman victim (a dog) was not the "sole" object of the defendant's use or exhibition of a deadly weapon because, while in the course of committing the offense of cruelty to non-livestock animals, the defendant had also threatened bystanders with the same knife that he used to injure the dog). Were we to conclude that a deadly weapon finding was improper merely because "the shots were only concentrated upon the truck and no other direction," as Baites urges, then the legislative policy of protecting people from criminals who use deadly weapons to commit their offenses would be frustrated. *See Scales,* 601 S.W.3d at 385 (providing that the Legislature intended to permit a deadly weapon finding "anytime the facts established that a deadly weapon was used or exhibited against a person with intent to facilitate an offense") (citing *Prichard,* 533 S.W.3d at 325). Balancing all *Alamanza*[5] factors, we

---

[5] We looked at the entire jury charge and note that nothing exacerbated the error. In this regard, neither party's closing argument, voir dire, or opening statements addressed the deadly weapon elements.

conclude the erroneous jury charge did not result in "actual harm" to Baites. *Almanza*,

686 S.W.2d at 174. Accordingly, we overrule Baites's second issue.

### IV.    CONCLUSION

We affirm the trial court's judgment.


JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
14th day of April, 2022.

---

As such, nothing militates in favor of finding harm.