**Affirmed as Modified and Opinion Filed October 19, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-01231-CR

### EMMANUEL LYNN LIMBERG, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F-1875450-K**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Partida-Kipness

Appellant Emmanuel Lynn Limberg appeals his conviction for Aggravated

Assault Causing Bodily Injury With a Deadly Weapon Family Violence, a second-

degree felony. Limberg brings two issues on appeal, and the State asserts five cross-

points. We overrule Limberg's issues, sustain the State's cross-points, modify the

judgment as requested by the State, and affirm the judgment as modified.

## BACKGROUND

Kristen Zapalac, the complainant, met Limberg in 2017 while working as the

front desk supervisor at a hotel Limberg frequently stayed at while in Dallas on

business. The pair began dating and, by early to mid-December, Limberg was

primarily staying with Zapalac at her apartment instead of getting a hotel room when he was in town. In February 2018, Limberg had the apartment lease transferred from Zapalac's roommate to him. Zapalac was a tenant on the lease. The assault at issue occurred on March 18, 2018. After working a night shift, Zapalac returned home around 8:00 or 8:30 a.m., went to sleep, and woke up around 4:00 or 5:00 p.m. According to Zapalac, Limberg was cooking bacon in the kitchen and yelling at her from the kitchen about leaving dirty dishes soaking in the kitchen sink. When she joined Limberg in the kitchen, Zapalac told him she wanted to break up with him but thought they should "both be adults and ride out the last two months on the lease." Limberg continued cooking while Zapalac talked and, when she finished talking, she asked Limberg if he heard her. Limberg replied, "Yeah, whatever. Are you done?" He then placed the cooked bacon on a plate and leaned into the refrigerator to get something.

Zapalac reached across the sink to turn off the stove and then grabbed the frying pan off the burner to wash it. Zapalac testified that when Limberg heard the "click" from her turning off the stove, Limberg "spun around," saw she had the pan of grease in her hand, "wrenched" the pan from her hand and, while holding it like he was performing a backhand with a tennis racket, "lobbed" the pan's grease onto Zapalac. As Limberg was throwing the grease on Zapalac, he stated "What the fuck are you doing? I'm not done cooking yet, you dumb bitch." She immediately felt the

hot grease hit her skin. A few minutes later, after the shock of the event wore off, Zapalac "felt like [she] was on fire."

Limberg told Zapalac that he grabbed the pan because he thought Zapalac was going to dump the grease on his head. At trial, Zapalac expressed disbelief at his explanation, telling the jury that Limberg is "a lot taller" than she is, so she did not understand how it would even be possible to pour grease on his head. Limberg then went to the bedroom, zipped up his suitcases, which he typically kept packed, and loaded his belongings in his car. When Limberg briefly came back inside the house, Zapalac told him to take all of his belongings because he was not coming back. She also told Limberg that her grease burns hurt "so bad." He responded, "Run some water over it, you damn bitch. God, you're so retarded." Before finally leaving, Limberg returned to the kitchen and got the bacon he had made and took it with him.

After being struck by the grease, Zapalac called two friends for comfort, called a third friend to ask for a ride to the hospital, and then FaceTimed her mother. When Zapalac's parents saw her burns, they advised her to go to the hospital and call the police. Zapalac called 911 and took videos on her cellphone of the crime scene and her burn injuries. She testified that she could not put on a shirt because the pain from her burns "hurt too bad." Zapalac told the 911 operator her "face was peeling off." At trial, she explained that her face felt like it was "melting off," and the grease continued to burn her skin with every passing second. Zapalac felt as if the pain was getting worse and worse every second. She told the jury that she feared the grease

would permanently scar her skin and disfigure her, and she could not believe someone would use grease to burn someone they love.

David Dixon and his partner were the Dallas Fire and Rescue paramedics dispatched to Zapalac's apartment. Dixon testified that this call was "unique" because burn calls are rare. He also explained that this was a "very bad" burn call that presented a "challenging situation." When he first saw Zapalac, Dixon noticed that she had second-degree burns on part of her face and left arm. He knew they were second-degree burns because the burn had "blistered up." Zapalac told the paramedics that she got burned from grease. Dixon's written narrative in his Prehospital Care Report Summary states that Zapalac reported, "My boyfriend put hot bacon grease on me." Dixon saw the skillet on the ground in the kitchen and saw grease everywhere, including on her body. Dixon and his partner put a burn sheet on Zapalac to keep the burns cool and moisturized. They wanted to get her to the hospital as quickly as possible. With any burn, paramedics "are in a hurry" to get the patient to the burn unit, but even more so with second and third degree burns. Zapalac testified that it was "difficult" for her when the paramedics placed the burn wrap on her, describing the wrap as "painful stuff." Although she "was in an incredible amount of pain," Zapalac drove herself to the emergency room because she believed she could not afford ambulance transport.

At the emergency room, hospital staff took Zapalac to a private room where nurses, police officers, and doctors asked questions, took pictures of her injuries, and

treated her burns. Zapalac "couldn't stop crying" because the grease burns caused her to feel like she "was on fire." She described the pain as "the most pain I have ever felt." She told the jury that the pain rated a nine out of ten. Zapalac received pain medication and an IV when she arrived at the hospital. After about ten minutes, Zapalac was calming down emotionally, "wasn't hyperventilating as hard," and began "feeling groggy." But the pain medication was only helping with the pain "very, very, very minimally."

At the hospital, blisters formed on Zapalac's "entire arm," on her face, and on her chest. Zapalac testified that the blisters "felt excruciating" and "as soon as one had formed, they were just popping up one after the -- one after the other." She explained that her skin was raw underneath the blisters after medical personnel removed the blisters and "it hurt so much."

Emergency trauma nurse Arika Tilma treated Zapalac. Tilma is certified in Advanced Burn Life Support and specializes in trauma and burns. Zapalac's medical team gave her medication for her pain and Silvadene, a healing ointment. Tilma testified that they use Silvadene in cases where the burns are deeper burns and more severe. Medical personnel cleaned her burn wounds with scrub brushes to remove the grease and blisters, and admitted her to the hospital because of the extent of the burns. At one point during her treatment, Zapalac watched her skin peel off as a nurse used a bristled brush and a sandpaper-like sponge to scrub her burns. Zapalac felt extreme pain from the scrubbing and begged the nurse to stop. The nurse

administered pain medication and resumed scrubbing. The pain medication did not work immediately so Zapalac pleaded with the nurse to stop. The nurse left and returned a few minutes later to finish scrubbing the burns.

Tilma testified that she treated Zapalac for burns to three-and-a-half to four percent of her body, including her forearm, shoulder, left side of her chin, and chest. Tilma noted that while three-and-a-half percent is not a large portion of Zapalac's body, Zapalac's burn percentage "still is significant, I mean, for the type of -- the mechanism in which it happened." According to Tilma, Zapalac told her that "she was in an altercation with her boyfriend and that . . . he had grabbed the pan of hot grease and threw it on her." Zapalac reported the same events to responding Dallas Police Department Officer Tyler Prothro. Tilma told the jury that Zapalac seemed "withdrawn" but was also in a lot of pain, uncomfortable, "very tearful," and emotionally upset while being treated.

The jury was shown photos of Zapalac's injuries before and after the treatment. Those exhibits included photos of skin peeling from her body after the nurse finished scrubbing, and raw skin on Zapalac's arm and chest after the nurse had popped the blisters. Zapalac had what she described as a third-degree burn by the corner of her mouth. That particular wound took "a good four months" to completely heal and was still causing her pain sporadically at the time of trial:

> Every time I opened my mouth, it felt like my -- my mouth was cracking open, like, tearing open more, and that -- despite that being the smallest

injury, that was the one that took the longest to heal and was most as --
I felt pain there longer than anywhere else. It was the worst.

Zapalac stated that her pain level was at a nine or ten for almost a week after the incident "and then it very gradually went down over the course of time." Photos of the burns taken about ten days after the incident show well-defined burns on Zapalac's arm, chest, and face. The burns look raw and pink. The burns on her face were partially scabbed, partially peeling, and bright pink underneath. Photos of her arm taken two weeks before trial show visible scarring from the burns.

The Dallas County grand jury indicted Limberg on one count of aggravated assault causing serious bodily injury under section 22.02(b)(1) of the penal code. The indictment charged the aggravated assault as a first-degree felony, alleging a family relationship between Limberg and Zapalac, and alleging Limberg used a deadly weapon, hot grease, during the commission of the assault. Limberg pled not guilty, and the case proceeded to trial. A jury found Limberg guilty of the second-degree felony of aggravated assault causing bodily injury with a deadly weapon family violence. The trial court sentenced Limberg to ten years' confinement and made affirmative deadly-weapon and family violence findings.

## ANALYSIS

Limberg brings two issues on appeal. We address each in turn.

## I.      Submission of Lesser-Included Offense

In his first issue, Limberg complains that the trial court submitted the lesser-included offense of second-degree aggravated assault with a deadly weapon. We

review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (internal citations omitted). Jury charge error requires reversal when the defendant has properly objected to the charge and we find "some harm" to his rights. *Id.* When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Id.*

Limberg was indicted for first-degree aggravated assault. The jury charge included instructions and a question on that offense as well as instructions and a question on second-degree aggravated assault. Limberg argues that the jury charge should not have included second-degree aggravated assault because the indictment alleged only that he used a deadly weapon, but a conviction for second-degree aggravated assault can be based on either the use or exhibition of a deadly weapon. According to Limberg, "[s]econd-degree aggravated assault under Section 22.02(a)(2) is not a lesser-included offense of first-degree aggravated assault under section 22.02(b)(1) because the second-degree assault has the additional element of exhibiting a deadly weapon." We conclude these arguments lack merit and overrule Limberg's first issue.

As a preliminary matter, the arguments Limberg makes on appeal on this issue were not raised below and, as such, are not preserved for review. At the charge

conference, Limberg's counsel objected to inclusion of the lesser-included offense on the ground that there was no evidence of mere bodily injury. On appeal, Limberg complains the second-degree offense is not a lesser-included offense because the second-degree offense can be established by proving he used or exhibited a deadly weapon, whereas the indictment alleged only use of a deadly weapon. This complaint does not match the objection made at trial. Because Limberg's complaint on appeal does not comport with his trial objection, he has failed to preserve error on this complaint. TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012); *Jasso v. State*, 112 S.W.3d 805, 812 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Even if Limberg had preserved error for our review, the record does not reflect any error occurred. First, Limberg's contention that second-degree aggravated assault is not a lesser-included offense of first-degree aggravated assault is contrary to established law. *See Wilson v. State*, No. 05-10-01604-CR, 2012 WL 3264396, at *5 (Tex. App.—Dallas Aug. 13, 2012, pet. ref'd) (not designated for publication) ("[a]ssault by committing bodily injury is a lesser-included offense of aggravated assault by inflicting serious bodily injury") (quoting *Hall v. State*, 225 S.W.3d 524, 531 (Tex. Crim. App. 2007)). Moreover, under this record, we conclude the trial court properly charged the jury on the lesser-included offense.

An aggravated assault is generally a second-degree felony that requires proof beyond a reasonable doubt of both (a) the commission of an assault by intentionally,

–9–

knowingly, or recklessly causing bodily injury to another, including the person's spouse, and (b) one of the following:

> (1) causing serious bodily injury to another, including the person's spouse; or

> (2) using or exhibiting a deadly weapon during the commission of the assault.

TEX. PENAL CODE §§ 22.01(a)(1) (assault); 22.02(a) (second-degree aggravated assault). An aggravated assault is a first-degree felony if the actor uses a deadly weapon and causes serious bodily injury to a person with whom the actor was in a "dating relationship" as defined by section 71.0021(b) of the family code, are family members as defined by section 71.003 of the family code, or are members of the same household as defined by section 71.005 of the family code. TEX. PENAL CODE § 22.02(b)(1).

Here, the State indicted Limberg for first-degree felony aggravated assault serious bodily injury with a deadly weapon, family violence under section 22.02(b)(1) of the penal code. The indictment states that Limberg (1) intentionally, knowingly and recklessly caused serious bodily injury to Zapalac by throwing hot grease on Zapalac, (2) used a deadly weapon, hot grease, during the commission of the assault, and (3) "has and has had a dating relationship" with Zapalac and was a member of Zapalac's family and household. TEX. PENAL CODE § 22.02(b)(1). Under that indictment, to convict Limberg of first-degree aggravated assault, the State was required to prove beyond a reasonable doubt that Limberg (1) assaulted Zapalac, (2)

used a deadly weapon during the commission of the assault, (3) caused serious bodily injury to Zapalac, and (4) was in one of the familial relationships set out in section 22.02(b)(1). *See* TEX. PENAL CODE § 22.02(b)(1).

In contrast, to convict Limberg of second-degree aggravated assault, the State was required to prove only that Limberg assaulted Zapalac and either (1) caused Zapalac serious bodily injury or (2) used[1] a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE § 22.02(a).

At trial, the court charged the jury on first-degree and second-degree aggravated assault. The second-degree charge sought conviction only for causing bodily injury and using a deadly weapon. TEX. PENAL CODE §§ 22.01(a)(1), 22.02(a)(1). The State did not seek conviction for second-degree aggravated assault by causing serious bodily injury without the use of a deadly weapon. TEX. PENAL CODE §§ 22.01(a)(1), 22.02(a)(2).

An offense will be a lesser-included offense when it is established by proof of the same or less than all the facts required to establish the commission of the charged offense. TEX. CODE CRIM. PROC. art. 37.09(1). To determine whether an offense qualifies as a lesser-included offense, courts use the cognate-pleadings approach. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). An offense is a lesser-included offense of another offense if the indictment for the

---

[1] The indictment did not allege exhibition of a deadly weapon, only use of a deadly weapon.

–11–

greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts from which all of the elements of the lesser-included offense may be deduced. *Id.* If this analysis supports a determination that the requested lesser offense is a lesser-included offense, the court will move to the second step of the test and consider whether a rational jury could find that, if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993).

Under the charge given here, the only difference between the first degree and second degree offenses was the degree of injury. To convict on either offense, the jury was required to find use of a deadly weapon, a dating or familial/household relationship between Limberg and Zapalac,[2] and that Limberg caused either bodily injury or serious bodily injury. If the jury had found Limberg caused serious bodily injury, then the jury would have convicted for first degree aggravated assault. But the jury found that Limberg only caused bodily injury and convicted on the second degree offense. Bodily injury is encompassed within serious bodily injury. *See Ortiz v. State*, 623 S.W.3d 804, 807 (Tex. Crim. App. 2021) ("aggravated assault is a bodily-injury assault plus aggravating elements of serious bodily injury or use of a deadly weapon. Tex. Penal Code § 22.02(a). Without the aggravating elements, there is still a bodily-injury assault."); *see also Stone v. State*, No. 05-12-01261-CR, 2014

---

[2] The charge included the element of family violence in the second-degree offense instructions even though that was not required for conviction on the lesser-included offense. Neither Limberg nor the State complain of this issue on appeal.

–12–

WL 1018196, at *1 (Tex. App.—Dallas Feb. 20, 2014, no pet.) (mem. op., not designated for publication) (noting that bodily injury is included within the definition of serious bodily injury in the penal code). Although the indictment alleged serious bodily injury, the elements of bodily injury to support the lesser-included offense were necessarily encompassed within the indictment. Further, the State alleged use of a deadly weapon in the indictment, which is an element of proof required in both degrees of felony charged here. Under these facts, we conclude the indictment alleged all of the elements of the lesser-included offense as charged at trial. Step one of the analysis is, therefore, met.

We next consider whether a rational jury could find that, if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau*, 855 S.W.2d at 673. The penal code defines bodily injury as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE § 1.07(a)(8). It defines serious bodily injury as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

Here, although the burns were severe and painful, the jury could have concluded that they did not rise to the level of a serious bodily injury because Zapalac was hospitalized for just one day, and her burns had healed before trial without severe complications and without "serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." It was

undisputed, however, that Zapalac suffered physical pain and, thus, bodily injury. Zapalac testified to the "excruciating" pain she endured from the burns and to the severe and lingering pain she suffered in the days, weeks, and months after the incident. Under this record, we conclude second-degree felony aggravated assault was a lesser-included offense and was properly charged here. As such, no harm analysis is required. *See Ngo*, 175 S.W.3d at 743–44. We overrule Limberg's first issue.

## II. Deadly Weapon Finding

In his second issue, Limberg challenges the sufficiency of the evidence to support the deadly weapon finding. Specifically, Limberg maintains the evidence is insufficient because the State did not elicit testimony that grease constituted a deadly weapon in this case. We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667.

To sustain a deadly-weapon finding, the evidence must show that the object satisfies the definition of "deadly weapon," that it was used or exhibited during the offense, and that someone other than the defendant was put in danger. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014); *Green v. State*, 465 S.W.3d

–14–

380, 382 (Tex. App.—Fort Worth 2015, pet. ref'd). The Texas Penal Code defines "deadly weapon" as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17). The "use" element can be satisfied by "*any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (citation and internal quotation marks omitted); *Hill v. State*, No. 02-16-00306-CR, 2018 WL 2248466, at *2 (Tex. App.—Fort Worth May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Patterson*).

Hot grease is not a deadly weapon per se because it is not an object "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17)(A); *see Cooper v. State*, No. 03-19-00007-CR, 2020 WL 5752920, at *8 (Tex. App.—Austin Sept. 23, 2020, pet. ref'd) (mem. op., not designated for publication) (knife is not a deadly weapon per se). But hot grease may become "a deadly weapon if, in the manner of its use or intended use, it is capable of causing death or serious bodily injury." *See Cooper*, 2020 WL 5752920, at *8; TEX. PENAL CODE § 1.07(a)(17)(B). To determine whether hot grease is a deadly weapon, we may consider (1) any words or threatening actions by the defendant, including his proximity to the victim, (2) the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the

weapon, and (3) the manner in which the defendant used the weapon. *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017). These are, however, merely factors used to guide a court's sufficiency analysis and are not "inexorable commands." *Id.*

The State need not establish that the use or intended use of the object actually caused death or serious bodily injury; only that "the manner" it was either used or intended to be used was "*capable*" of causing death or serious bodily injury. *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017) (quoting *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008)). Nor is the State required to prove that the actor actually intended death or serious bodily injury. *Moore*, 520 S.W.3d at 909; *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Moreover, it "is not necessary" to admit the object or provide a detailed description of the object "when there is other evidence showing [the object] was capable of inflicting serious bodily injury in the manner in which it was used." *Cooper*, 2020 WL 5752920, at *8. Injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used. *Tucker*, 274 S.W.3d at 691–92 (two-inch folding knife or key were objects "capable" of causing death or serious bodily injury); *Johnson v. State*, No. 05-19-00986-CR, 2021 WL 1248271, at *4 (Tex. App.— Dallas Apr. 5, 2021, no pet.) (mem. op., not designated for publication) (butcher knife with a seven-inch blade used to hit complainant across the head and inflict

large gash was, in the manner of its actual use, capable of causing death or serious bodily injury).

Here, the jurors heard testimony from which they could reasonably conclude that the hot grease was capable of causing injury or death. Tilma testified that Zapalac's doctors admitted her to the hospital because of "the extent of her burn." Tilma further explained that "[g]rease burns are very significant," in that they continue to burn and "cook" a patient's skin even after cleaning. Further, a grease burn may look "superficial on the outside," but it can "just continue to get deeper in depth." Tilma told the jury that if a grease burn is left untreated, it can "progress to a third-degree burn," become infected, or require "extensive skin grafting." She confirmed that the types of burns Zapalac suffered "have a very high rate of infection" and, if Zapalac had not sought treatment, "there is a good possibility that there could be deeper scars; multiple hospital visits, due to the fact that there was an infection; multiple OR visits, due to the depth of the burn and needing skin grafting." Tilma also stated that she believed Zapalac's grease burns were "permanently disfiguring" and would leave scars "probably for a good amount of time." Tilma agreed that grease can be used as a deadly weapon. She told the jury that, based on her training and experience, a grease burn like Zapalac's is capable of causing death depending "on the total body surface area" of the burn.

Although the jury may not have believed that Zapalac's burns were a serious injury, that did not preclude the jury from finding that the hot grease was capable, in

the manner of its use, of causing death or serious bodily injury. The burns were on her face, arm, and chest, each of which are vital areas that "would seem to carry at least some potential for resulting in a serious bodily injury . . . or death." *See Tucker*, 274 S.W.3d at 692. Indeed, at the time of trial, Zapalac's scars remained visible on her arm, and she wore make-up daily to cover the scars on her face. Viewed in the light most favorable to the verdict, the evidence presented here showed that the hot grease was, in the manner of its actual use, capable of causing death or serious bodily injury. The evidence was, therefore, sufficient to support the deadly weapon finding. We overrule Limberg's second issue.

## STATE'S CROSS-POINTS

The State asserts five cross-points in which the State requests modification of the judgment to correct clerical errors in the trial court's judgment. The State requests we modify the judgment to reflect the following: (1) the correct name of the offense for which Limberg was convicted, (2) that punishment was determined by the trial judge, not the jury, (3) that Limberg filed a written election for the trial judge to assess punishment, (4) the correct name of the attorney for the State, and (5) the correct degree of the felony for which Limberg was convicted.

We have the power to modify a judgment to speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). The record supports the requested

modifications and we, therefore, agree with the State that the judgment needs to be corrected.

First, the record shows Limberg was convicted of "Aggravated Assault Causing Bodily Injury With a Deadly Weapon Family Violence" (i.e., second-degree aggravated assault) under Section 22.02(a)(2) of the Texas Penal Code. The judgment, however, states that he was convicted of "Aggravated Assault Date/Family House SBI With Weapon" (i.e., first degree felony aggravated assault with a deadly weapon) under section 22.02(b)(1) of the penal code. The judgment should be modified to reflect the correct offense for which Limberg was convicted and the correct statute for the offense. Accordingly, we sustain the State's first cross-point and modify the trial court's judgment to replace "Aggravated Assault Date/Family House SBI With Weapon" as the "Offense for which Defendant Convicted" with "Aggravated Assault Causing Bodily Injury With a Deadly Weapon Family Violence." We further replace "22.02(b)(1) Penal Code" as the "Statute for Offense" with "22.02(a)(2) Penal Code."

Next, the State asks us to modify the judgment to reflect that the trial judge assessed punished. The record confirms that the trial judge assessed punishment. The judgment, however, states that the jury assessed punishment. The judgment should be modified to reflect the truth. We, therefore, modify the trial court's judgment to state that the trial judge assessed punishment by replacing "JURY" with "Trial Court" as to "Punishment Assessed by."

–19–

Similarly, the State asks us to reform the judgment to reflect that Limberg filed a written election for the trial judge to assess punishment. The record confirms Limberg's election for the trial judge to assess punishment, but the judgment does not reflect that election. Instead, the judgment states that the jury assessed punishment pursuant to Limberg's election. We, therefore, modify the trial court's judgment by removing the "X" selecting the paragraph designating that Limberg made an election for the jury to assess punishment and adding an "X" selecting the paragraph that Limberg filed a written election for the trial judge to assess punishment. We sustain the State's third cross-point.

In its fourth cross-point, the State asks the Court to modify the judgment to reflect the correct name of the attorney who represented the State at trial. The judgment reflects that Michelle Shugart represented the State during Limberg's trial. The record shows, however, that Annelise DeFrank prosecuted the case on behalf of the State of Texas. We sustain the State's fourth cross-point, and modify the trial court's judgment by replacing Michelle Shugart with Annelise DeFrank as the attorney who represented the State at trial.

Finally, the State asks the Court to modify the judgment to reflect the correct degree of the felony for which Limberg was convicted. The judgment states that the offense for which Limberg was convicted is a first-degree felony. The record reflects, however, that Limberg was convicted of aggravated assault causing bodily injury with a deadly weapon, family, which is a second-degree felony. We sustain

–20–

the State's fifth cross-point and modify the judgment to change the "Degree of Offense" from "1st Degree Felony" to "2nd Degree Felony."

In reviewing the record, we discovered that the signature line on the judgment lists the wrong judge. The Honorable Michael R. Snipes presided over this case, but the typed name under the signature line lists the Honorable Dominique Collins as the presiding judge. The signature is illegible. During oral argument, Limberg's counsel agreed that Judge Snipes presided at trial. Counsel further agreed to reformation of the judgment to reflect that Judge Snipes presided at trial and signed the judgment. We, therefore, modify the judgment to replace Judge Dominque Collins from the signature line with Judge Michael R. Snipes as the presiding judge. *See Asberry*, 813 S.W.2d at 529–30 (appellate court may act sua sponte to reform incorrect judgments).

## CONCLUSION

We overrule Limberg's appellate issues, sustain the State's cross-points, and affirm the trial court's judgment as modified.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

191231F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EMMANUEL LYNN LIMBERG,
Appellant

No. 05-19-01231-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas Trial Court Cause No. F-1875450-K. Opinion delivered by Justice Partida-Kipness. Justices Myers and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

- Replace "Aggravated Assault Date/Family House SBI With Weapon" with "Aggravated Assault Causing Bodily Injury With a Deadly Weapon Family Violence" as the "Offense for which Defendant Convicted."

- Replace "22.02(b)(1) Penal Code" with "22.02(a)(2) Penal Code" as the "Statute for Offense"

- Replace "JURY" with "Trial Court" as to "Punishment Assessed by."

- Remove the "X" selecting the paragraph designating that Appellant made an election for the jury to assess punishment and adding an "X" selecting the paragraph that Appellant filed a written election for the trial judge to assess punishment.

- Replace Michelle Shugart with Annelise DeFrank as the attorney who represented the State at trial.

- Change the "Degree of Offense" from "1st Degree Felony" to "2nd Degree Felony."

- Change the name of the presiding judge on the signature line from Judge Dominque Collins to Judge Michael R. Snipes.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 19th day of October 2021.